UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

CITY OF OMAHA POLICE AND
FIREFIGHTERS RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

                         Plaintiff,

        v s .

COGNYTE SOFTWARE LTD, ELAD
SHARON, and DAVID ABADI

                         Defendants.

————————————————————x

Civil Action No.

<u>CLASS ACTION</u>

**COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS**

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff City of Omaha Police and Firefighters Retirement System ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts; and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the U.S. Securities and Exchange Commission ("SEC") filings by Cognyte Software Ltd ("Cognyte" or the "Company"), press releases and other announcements by the Company, and media reports about the Company.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This is a securities class action on behalf of all purchasers of Cognyte common stock between February 2, 2021 and June 28, 2022, inclusive (the "Class Period"), against Cognyte and certain of its officers and/or directors, for violations of the U.S. Securities Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

2.      Cognyte is an Israel-based security analytics software company, which began trading as an independent entity in February 2021 following a spin-off from Verint Systems Inc. ("Verint").  Cognyte's stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker CGNT.

3.      During the Class Period, Defendants made misleading statements and omissions that concealed the fact that Cognyte's business practices violated Meta Platforms Inc.'s ("Meta") community standards and terms of services.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

5.      Venue is proper here pursuant to §27 of the 1934 Act.  Cognyte's common stock is listed on the NASDAQ, which is located in this District, and many of the acts and transactions giving rise to the violations of law complained of occurred in this District.

6.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

7.      Plaintiff purchased Cognyte common stock as described in the attached certification, incorporated herein, and was damaged thereby.

8.      Defendant Cognyte describes itself as a global leader in investigative analytics software that empowers governments and enterprises with Actionable Intelligence for a safer world.  Cognyte is incorporated under the laws of the State of Israel and its headquarters are located in Herzliya Pituach, Israel.  Its common stock is listed and trades on the NASDAQ under the ticker CGNT.

9.      Defendant Elad Sharon ("Sharon") is, and at all relevant times was, the Chief Executive Officer ("CEO") of Cognyte.

10.     Defendant David Abadi ("Abadi") is, and at all relevant times was, the Chief Financial Officer ("CFO") of Cognyte.

11.     Defendants Sharon and Abadi (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of

Cognyte's filings with the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

12.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Cognyte.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Cognyte common stock was a success, as it: (i) deceived the investing public regarding Cognyte's business; (ii) artificially inflated the price of Cognyte's common stock; and (iii) caused Plaintiff and other members of the Class to purchase Cognyte common stock at inflated prices.

## BACKGROUND

13.     On December 4, 2019, Verint announced plans to separate into two independent companies: Cognyte Software Ltd., which would consist of Verint's Cyber Intelligence Solutions business, and Verint Systems Inc., which would consist of Verint's Customer Engagement Business.  On February 1, 2021, Cognyte and Verint completed the spin-off and the related separation and distribution.  As a result, Cognyte became an independent, publicly traded company whose shares were (and continue to be) listed on the NASDAQ under the ticker symbol "CGNT." Cognyte purports to be a global leader in security analytics software.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

14.     The Class Period starts on February 2, 2021, the day Cognyte's ordinary shares registered pursuant to a January 14, 2021 amended registration statement on Form 20-F (the "Registration Statement"), which the SEC declared effective on January 15, 2021, began trading on the NASDAQ.

15.     The Registration Statement made misleading statements and omitted material information about the Company's business, specifically with respect to the solutions and services it provided (and continues to provide) to customers.  For example, the Registration Statement describes the Company's solutions as follows:

> Our solutions span across three categories.  Each category addresses specific security challenges with common characteristics, as follows:
>
> ***Investigative Analytics***
>
> \*       \*       \*
>
> The Cognyte investigative analytics solutions are designed to empower investigative teams with Actionable Intelligence by providing:
>
> - the ability to effectively fuse massive amounts of data from many different sources;
>
> - tools to analyze data through predictive and behavioral analytics and rapidly transform data into critical insights; and
>
> - workflows to uncover vital leads and drive collaboration across investigative teams to accelerate investigations and reach faster conclusions and resolutions.
>
> ***Operational Intelligence Analytics***
>
> \*       \*       \*
>
> The Cognyte operational intelligence analytics solutions are designed to empower field security teams with Actionable Intelligence by providing:
>
> - real-time or near real-time insights delivered to users through mobile devices;

4

- visualization tools that bring intuitive insights to the field teams; and

- the ability to adjust analytics parameters based on changing circumstances to support events on the ground.

***Threat Intelligence Analytics***

\*       \*       \*

The Cognyte threat intelligence analytics solutions are designed to empower SOC teams with Actionable Intelligence by providing:

- the ability to fuse data from a variety of data sources systems and devices and provide real time situational intelligence;

- tools to analyze events, recognize anomalies, visualize insights, and drive a real time response; and

- visualization and workflows that can drive action and support collaboration across security teams responding to cyber incidents.

16.     The foregoing statements were false and misleading in light of the fact that Cognyte created, distributed, and provided reconnaissance tools and services that violated community standards and terms of service of communication network sources and technologies, like Facebook, exposing the Company to significant financial and reputational risk.

## THE TRUTH IS REVEALED

17.     On December 16, 2021, after the market closed, Meta, the parent company of Facebook and Instagram, issued a "Threat Report," which included the results of its "months long" investigation into the "surveillance-for-hire industry," revealing for the first time that Cognyte (along with six private companies) regularly targeted, without their knowledge, journalists, dissidents, critics of authoritarian regimes, families of opposition, and human rights activists around the world, and collected intelligence on these people by manipulating them to reveal information and/or by compromising their devices and accounts, in violation of Facebook's "multiple community standards and Terms of Service."  In particular, the Threat Report revealed

that Cognyte "sells access to its platform which enables managing fake accounts across social media platforms including Facebook, Instagram, Twitter, YouTube, and VKontakte (VK), and other websites to social-engineer people and collect data."  This conduct "violated multiple Community Standards and Terms of Service," and "given the severity of their violations," Meta disabled Cognyte's ability to use its platforms (removing about 100 accounts on Facebook and Instagram), shared is findings with security researchers, other platforms, and policymakers, issued Cease and Desist warnings, and alerted the nearly 50,000 individuals (across 100 countries) who were believed to be targeted to help them strengthen the security of their accounts.

18.     On this news, the price of Cognyte's common stock fell 5.11%, closing on December 17, 2021, at $18 per share, before declining another 5.5% the next trading day.  By December 22, 2021, Cognyte's stock had fallen to trade at $15 per share, representing a decline of nearly 21%.

19.     Then, on April 5, 2022, Cognyte issued its Annual Report on Form 20-F for the period ended January 31, 2022 (the "2021 Annual Report"), revealing that the Company was forced to modify its solutions in response to the Threat Report, stating in relevant part:

> Our solutions capture, fuse and analyze data collected from various sources, including from commercial web sources and social platforms.  Such sources and platforms may allege that our solutions and techniques for capturing and collecting data and information from such sources violate their terms of use or other propriety rights of such sources or of their users.  In December 2021, Meta Platforms Inc., or Meta, issued a report alleging that certain solutions offered by us that interface with Facebook and Instagram platforms violate their terms of use.  Concurrently with the issuance of the foregoing report, Meta announced that it had removed accounts that it claimed were associated with our solutions and requested we cease data collection from its social platforms.  ***In response to Meta's allegations, we made modifications to certain features of our solutions, which impacted the manner our customers can use these solutions***.  Any allegations that our solutions and techniques infringe the terms of use or rights of third parties may result in legal claims against us or our customers.  These claims may damage our reputation, adversely impact our customer relationships and create liability for us.

20.     On the same day it published its 2021 Annual Report, Cognyte reported its fourth quarter 2021 financial results, representing the period during which Facebook disrupted and disabled Cognyte's use of its platforms for purposes of reconnaissance.  Cognyte badly missed analyst consensus estimates for non-GAAP earnings per share and sales, and significantly undershot the midpoint of its guidance range by several millions of dollars, citing in the Company's accompanying press release "lower conversions within [its] product pipeline," among other macroenvironmental challenges.  Specifically, the Company's non-GAAP earnings of $0.16 per share were not only down significantly from the $0.36 per share it earned in the year-ago quarter but also $0.06 per share below analysts' expectations of $0.22 per share.  Similarly, Cognyte's sales of $124.9 million, representing a less than 1% increase from the year-ago period, also came significantly below analysts' consensus estimate of $129.6 million.

21.     The response from analysts was swift with many reducing their price targets, including Wedbush, who lowered their price target from $17 to $9 and concluded:

> [T]he Cognyte business model is turning into a debacle of [ ] epic proportions for investors that once believed in the story.  Since the spin-off from Verint over the past year, the Cognyte story ha[s] been a nightmare for investors as the execution shortfalls, longer sales cycles, and myriad of challenges has created a perfect storm for the Street. Most troubling to us is that CGNT was unable to guide for 1Q23 and 2023, which means to us that management may not have their arms around the sales execution and headwinds in our opinion.

22.     The market also responded immediately and harshly.  Cognyte's stock price plummeted over 31% on unusually high trading volume, closing at $8.03 per share on April 5, 2022, which was down $3.63 per share from its April 4, 2022 close of $11.66 per share.

23.     Then, on June 28, 2022, Cognyte released its first quarter 2022 financial results, which, once again, badly missed analyst estimates across the board.  Cognyte's 1Q22 revenue of $87 million, for example, represented a decline of 25%.  Analysts were expecting a decline of 2%.

24.     In response, analysts immediately downgraded the Company's rating and reduced their price targets.  William Blair, for example, downgraded Cognyte to "market perform" and concluded that Cognyte's "low pipeline conversion" issues were a symptom of a broader problem, stating in relevant part:

> Cognyte's brand has been negatively impacted by increased scrutiny of the cyber intelligence industry and fellow Israel cyber surveillance firm NSO Group. Last fall, the U.S. government blacklisted the NSO Group after a multitude of reports surfaced that its software was being used inappropriately by governments to spy on citizens with dissenting views. While we believe there is value to cyber intelligence, we believe that it is important for investors and customers that there are rigid safeguards in place and high transparency to ensure that the software is used in an ethical manner.

25.     On this news, Cognyte's shares declined $1.84, or over 28.66%, to close at $4.58 per share.

## ADDITIONAL SCIENTER ALLEGATIONS

26.     As alleged herein, Cognyte and the Individual Defendants acted with scienter in that they: (i) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Cognyte, their control over, and/or receipt and/or modification of Cognyte's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Cognyte, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

27.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Cognyte common stock and operated as a fraud or deceit on purchasers of Cognyte common stock.  As detailed above, when the truth about Cognyte's misconduct was revealed, the value of Cognyte's common stock declined precipitously as the prior artificial inflation no longer propped up the common stock price.  The decline in the price of Cognyte common stock was the direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the share-price decline negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Cognyte common stock and the subsequent significant decline in the value of Cognyte common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

28.    At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Cognyte's business, operations, and financial results as alleged herein.  Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make defendants' statements not false or misleading, causing the price of Cognyte's common stock to be artificially inflated.  Plaintiff and other Class members purchased Cognyte common stock at those artificially inflated prices, causing them to suffer damages as complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

29.     Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated upon omissions of material fact for which there was a duty to disclose.

30.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Cognyte common stock was an efficient market at all relevant times by virtue of the following factors, among others:

(a)     Cognyte common stock met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient market;

(b)     Cognyte regularly communicated with public investors via established market-communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)     Cognyte was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

31.     As a result of the foregoing, the market for Cognyte common stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of the common stock.  Under these circumstances, all those who transacted in Cognyte common stock during the Class Period suffered similar injury through

10

their transactions in Cognyte common stock at artificially inflated prices and a presumption of reliance applies.

32.    Without knowledge of the misrepresented or omitted material facts, Plaintiff and other Class members purchased or acquired Cognyte common stock between the time defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed. Accordingly, Plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for Cognyte common stock and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

**COUNT I**
**For Violation of §10(b) of the 1934 Act and Rule 10b-5**
**Against All Defendants**

33.    Plaintiff incorporates ¶¶1-32 by reference.

34.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   (a)    employed devices, schemes, and artifices to defraud;

   (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

11

(c)      engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Cognyte common stock during the Class Period.

36.      Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Cognyte common stock.  Plaintiff and the Class would not have purchased Cognyte common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

**COUNT II**
**For Violation of §20(a) of the 1934 Act**
**Against All Defendants**

37.      Plaintiff incorporates ¶¶1-36 by reference.

38.      The Individual Defendants acted as controlling persons of Cognyte within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, the Individual Defendants had the power and authority to cause Cognyte to engage in the wrongful conduct complained of herein.  Cognyte controlled the Individual Defendants and all of its employees.  By reason of such conduct, Defendants are liable pursuant to §20(a) of the 1934 Act.

**CLASS ACTION ALLEGATIONS**

39.      Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all purchasers of Cognyte common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families.

40.      The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to

the parties and the Court.  Cognyte common stock is owned by hundreds, if not thousands, of persons, or more.

41.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the prices of Cognyte common stock were artificially inflated; and

(f)      the extent of damage sustained by Class members and the appropriate measure of damages.

42.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from defendants' wrongful conduct.

43.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff as a lead plaintiff and approving his selection of lead counsel;

B.      Awarding Plaintiff and the members of the Class damages, including interest;

C.      Awarding Plaintiff's reasonable costs and attorneys' fees; and

Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 1, 2023                      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

   *s/ Thomas L. Laughlin, IV*
THOMAS L. LAUGHLIN, IV (TL-8888)
DONALD A. BROGGI (DB-9661)
RHIANA L. SWARTZ (RS-2332)
JONATHAN M. ZIMMERMAN (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Counsel for Plaintiff City of Omaha Police and Firefighters Retirement System*

14