UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIREFIGHTERS RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> COGNYTE SOFTWARE LTD, ELAD SHARON, and DAVID ABADI, <br><br> Defendants. | Case No.  1:23-cv-01769-LGS <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CLAL INSURANCE COMPANY LTD., CLAL PENSION AND PROVIDENT LTD., AND ATUDOT PENSION FUND FOR EMPLOYEES & INDEPENDENT WORKERS LTD. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT ..............................................................................................................................6

    A.    CLAL SHOULD BE APPOINTED LEAD PLAINTIFF .......................................6

        1.    Clal Is Willing to Serve as a Class Representative ....................................7

        2.    Clal Has the "Largest Financial Interest" .....................................................7

        3.    Clal Otherwise Satisfies the Requirements of Rule 23 of the
               Federal Rules of Civil Procedure ..................................................................8

        4.    Clal Will Fairly and Adequately Represent the Interests of the
               Class and Is Not Subject to Unique Defenses............................................12

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
        APPROVED ..............................................................................................................12

CONCLUSION...........................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
　2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)..............................................................................9

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
　141 F.R.D. 229 (S.D.N.Y. 1992) ...........................................................................................10

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
　2018 WL 3093965 (S.D.N.Y. June 21, 2018) .........................................................................8

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
　2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................................................................10

*Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A,
　1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ..............................................................................9

*Foley v. Transocean Ltd.*,
　272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................................10

*Glauser v. EVCI Career Colleges Holding Corp.*,
　236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................2, 11

*Gluck v. CellStar Corp.*,
　976 F. Supp. 542 (N.D. Tex. 1997) .........................................................................................9

*In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*,
　2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015)..........................................................................11

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001)......................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
　2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)........................................................................8, 13

*In re Doral Fin. Corp. Sec. Litig.*,
　414 F. Supp. 2d 398 (S.D.N.Y. 2006)....................................................................................11

*In re Drexel Burnham Lambert Grp., Inc.*,
　960 F.2d 285 (2d Cir. 1992)......................................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
　233 F.R.D. 147 (D. Del. 2005) ...............................................................................................12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...............................................................................8, 9

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
    2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...........................................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................................9

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ......................................................................................2, 11

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ...........................................................................................10

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ...........................................................................................12

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
    1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .............................................................................7

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...................................................................2, 11

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
    2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .........................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................12

## **Statutes**

15 U.S.C. § 78u-4 ........................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .............................................................. *passim*

Securities Exchange Act of 1934...................................................................................................1

## **Rules**

Fed. R. Civ. P. 23............................................................................................................. *passim*

Movants Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees & Independent Workers Ltd. (collectively "Clal") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Clal as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Cognyte Software Ltd. ("Cognyte" or the "Company") securities between February 2, 2021 and June 28, 2022, both dates inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. Cognyte investors, including Clal, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Cognyte securities to fall sharply, damaging Clal and other Cognyte investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with its purchases or acquisitions of Cognyte securities during the Class Period, Clal incurred losses of approximately $56,514,946. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Accordingly, Clal believes that it has the largest financial interest in the relief sought in the Action.

1

Beyond its considerable financial interest, Clal also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class. As a sophisticated institutional investor, Clal is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733. For this reason, courts in the Second Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)); *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Clal has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Clal respectfully requests that the Court enter an order appointing it as Lead Plaintiff for the Class and approving its selection of Pomerantz as Lead Counsel for the Class.

2

**STATEMENT OF FACTS**

As alleged in the Complaint in the Action, Cognyte is an Israel-based security analytics software company, which began trading as an independent entity in February 2021 following a spin-off from Verint Systems Inc. ("Verint"). Cognyte's stock trades on the NASDAQ Global Market under the ticker CGNT.

During the Class Period, Defendants made misleading statements and omissions that concealed the fact that Cognyte's business practices violated Meta Platforms Inc.'s ("Meta") community standards and terms of services.

On December 16, 2021, after the market closed, Meta, the parent company of Facebook and Instagram, issued a "Threat Report," which included the results of its "months long" investigation into the "surveillance-for-hire industry," revealing for the first time that Cognyte (along with six private companies) regularly targeted, without their knowledge, journalists, dissidents, critics of authoritarian regimes, families of opposition, and human rights activists around the world, and collected intelligence on these people by manipulating them to reveal information and/or by compromising their devices and accounts, in violation of Facebook's "multiple community standards and Terms of Service." In particular, the Threat Report revealed that Cognyte "sells access to its platform which enables managing fake accounts across social media platforms including Facebook, Instagram, Twitter, YouTube, and VKontakte (VK), and other websites to social-engineer people and collect data." This conduct "violated multiple Community Standards and Terms of Service," and "given the severity of their violations," Meta disabled Cognyte's ability to use its platforms (removing about 100 accounts on Facebook and Instagram), shared is findings with security researchers, other platforms, and policymakers, issued

3

Cease and Desist warnings, and alerted the nearly 50,000 individuals (across 100 countries) who were believed to be targeted to help them strengthen the security of their accounts.

On this news, the price of Cognyte's common stock fell 5.11%, closing on December 17, 2021, at $18 per share, before declining another 5.5% the next trading day. By December 22, 2021, Cognyte's stock had fallen to trade at $15 per share, representing a decline of nearly 21%.

Then, on April 5, 2022, Cognyte issued its Annual Report on Form 20-F for the period ended January 31, 2022 (the "2021 Annual Report"), revealing that the Company was forced to modify its solutions in response to the Threat Report, stating in relevant part:

> Our solutions capture, fuse and analyze data collected from various sources, including from commercial web sources and social platforms. Such sources and platforms may allege that our solutions and techniques for capturing and collecting data and information from such sources violate their terms of use or other propriety rights of such sources or of their users. In December 2021, Meta Platforms Inc., or Meta, issued a report alleging that certain solutions offered by us that interface with Facebook and Instagram platforms violate their terms of use. Concurrently with the issuance of the foregoing report, Meta announced that it had removed accounts that it claimed were associated with our solutions and requested we cease data collection from its social platforms. ***In response to Meta's allegations, we made modifications to certain features of our solutions, which impacted the manner our customers can use these solutions***. Any allegations that our solutions and techniques infringe the terms of use or rights of third parties may result in legal claims against us or our customers. These claims may damage our reputation, adversely impact our customer relationships and create liability for us.

On the same day it published its 2021 Annual Report, Cognyte reported its fourth quarter 2021 financial results, representing the period during which Facebook disrupted and disabled Cognyte's use of its platforms for purposes of reconnaissance. Cognyte badly missed analyst consensus estimates for non-GAAP earnings per share and sales, and significantly undershot the midpoint of its guidance range by several millions of dollars, citing in the Company's accompanying press release "lower conversions within [its] product pipeline," among other macroenvironmental challenges. Specifically, the Company's non-GAAP earnings of $0.16 per

4

share were not only down significantly from the $0.36 per share it earned in the year-ago quarter but also $0.06 per share below analysts' expectations of $0.22 per share.  Similarly, Cognyte's sales of $124.9 million, representing a less than 1% increase from the year-ago period, also came significantly below analysts' consensus estimate of $129.6 million.

The response from analysts was swift with many reducing their price targets, including Wedbush, who lowered their price target from $17 to $9 and concluded:

> [T]he Cognyte business model is turning into a debacle of [ ] epic proportions for investors that once believed in the story. Since the spin-off from Verint over the past year, the Cognyte story ha[s] been a nightmare for investors as the execution shortfalls, longer sales cycles, and myriad of challenges has created a perfect storm for the Street. Most troubling to us is that CGNT was unable to guide for 1Q23 and 2023, which means to us that management may not have their arms around the sales execution and headwinds in our opinion.

The market also responded immediately and harshly.  Cognyte's stock price plummeted over 31% on unusually high trading volume, closing at $8.03 per share on April 5, 2022, which was down $3.63 per share from its April 4, 2022 close of $11.66 per share.

Then, on June 28, 2022, Cognyte released its first quarter 2022 financial results, which, once again, badly missed analyst estimates across the board.  Cognyte's 1Q22 revenue of $87 million, for example, represented a decline of 25%.  Analysts were expecting a decline of 2%.

In response, analysts immediately downgraded the Company's rating and reduced their price targets.  William Blair, for example, downgraded Cognyte to "market perform" and concluded that Cognyte's "low pipeline conversion" issues were a symptom of a broader problem, stating in relevant part:

> Cognyte's brand has been negatively impacted by increased scrutiny of the cyber intelligence industry and fellow Israel cyber surveillance firm NSO Group. Last fall, the U.S. government blacklisted the NSO Group after a multitude of reports surfaced that its software was being used inappropriately by governments to spy on citizens with dissenting views. While we believe there is value to cyber intelligence, we believe that it is important for investors and customers that there are rigid

5

safeguards in place and high transparency to ensure that the software is used in an ethical manner.

On this news, Cognyte's shares declined $1.84, or over 28.66%, to close at $4.58 per share.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Clal and other Class members have suffered significant losses and damages.

<u>ARGUMENT</u>

## A.    CLAL SHOULD BE APPOINTED LEAD PLAINTIFF

Clal should be appointed Lead Plaintiff because it has the largest financial interest in the Action to its knowledge and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Clal satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Clal Is Willing to Serve as a Class Representative

On March 1, 2023, counsel for the plaintiff in the Action caused a notice to be published over *Accesswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors in Cognyte securities that they had until May 1, 2023—*i.e.*, 60 days from the date of the Notice— to file a motion to be appointed as Lead Plaintiff. *See* Lieberman Decl., Ex. B.

Clal has filed the instant motion pursuant to the Notice and has submitted sworn Certifications executed by Barak Benski and Dovik Caspi, Clal's Chief Investment Officer and Vice Chief Investment officer, respectively, with authority to bind Clal and enter into litigation on its behalf, attesting to Clal's willingness to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Clal satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Clal Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Clal has the largest financial interest of any Cognyte investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, including: (1) the

number of shares purchased during the class period; (2) the total net funds expended during the class period; and (3) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Clal: (1) purchased or otherwise acquired 5,250,259 shares of Cognyte stock; (2) expended $142,929,245 on its purchases or acquisitions of Cognyte stock; and (3) as a result of the disclosures of the fraud, suffered a loss of $56,514,946 in connection with its purchases or acquisitions of Cognyte stock.  *See* Lieberman Decl., Ex. A.  Because Clal possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

    **3.**    **Clal Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

---

[1] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23". *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other

9

class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Clal's claims are typical of those of the Class. Clal alleges, as do all Class members, that Defendants violated federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitting to state material facts necessary to make the statements they did make not misleading. Clal, as did all Class members, purchased or otherwise acquired Cognyte securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Clal is an adequate representative for the Class. There is no antagonism between the interests of Clal and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, Clal has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Action and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

10

As noted above, Clal is a sophisticated institutional investor. As such, its appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments*, 233 F.R.D. at 332-33); *Ophthotech*, 2018 WL 1307285, at *6 ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 WL 5244735, at *5 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n. 8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

Indeed, Clal and Pomerantz have already demonstrated their commitment and ability to protect the interests of investors together by serving as co-Lead Plaintiffs and Lead Counsel, respectively, in the PSLRA action *Jansen v. International Flavors & Fragrances Inc. et al.*, No. 1:19-cv-07536 (S.D.N.Y.). *See* Lieberman Decl., Ex. D. Additionally, Clal and Pomerantz are also currently serving as co-Lead Plaintiffs and co-Lead Counsel, respectively, in a PSLRA action on behalf of Perrigo Company plc investors in *Roofer's Pension Fund v. Papa et al.*, No. 2:16-cv-02805 (D.N.J.) ("*Perrigo*"). *See id.* Following extensive discovery, including document production and depositions, Clal was certified as a class representative by the court in *Perrigo*.

11

*See Perrigo*, Dkt. Nos. 226, 227. Through its prosecution of these actions, Clal has developed considerable experience and appreciation for a Lead Plaintiff's responsibilities under the PSLRA. *Id.*

> ### 4.    Clal Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Clal as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Clal to fairly and adequately represent the Class has been discussed above. Clal is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, Clal should be appointed Lead Plaintiff for the Class.

> ### B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

12

Here, Clal has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See* Lieberman Decl., Ex. D. As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Action, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Action. Thus, the Court may be assured that by approving the selection of Lead Counsel by Clal, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Clal respectfully requests that the Court issue an Order: (1) appointing Clal as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated: May 1, 2023                                   Respectfully submitted,

                                                     POMERANTZ LLP

                                                     */s/ Jeremy A. Lieberman*
                                                     Jeremy A. Lieberman
                                                     J. Alexander Hood II
                                                     Thomas H. Przybylowski

600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

POMERANTZ LLP
Orly Guy
Eitan Lavie
HaShahar Tower
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

*Counsel for Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees & Independent Workers Ltd. and Proposed Lead Counsel for the Class*

14