UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIREFIGHTERS RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br>  v.<br><br>COGNYTE SOFTWARE LTD., ELAD SHARON, and DAVID ABADI,<br><br>      Defendants. | Case No.  1:23-cv-01769-LGS<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF CLAL INSURANCE COMPANY LTD., CLAL PENSION AND PROVIDENT LTD., AND ATUDOT PENSION FUND FOR EMPLOYEES & INDEPENDENT WORKERS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION OF CITY OF OMAHA POLICE AND FIREFIGHTERS RETIREMENT SYSTEM |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT........................................................................................................................... 4

    I.      THE COURT SHOULD APPOINT CLAL AS LEAD PLAINTIFF ..................... 4

           A.     Clal Has the Largest Financial Interest of any Movant .............................. 4

           B.     All of Clal's Losses Should Be Considered in Assessing Its Financial
                 Interest....................................................................................................... 5

           C.     Clal Also Has the Largest Financial Interest Assessed Only with
                 Reference to Open Market Purchases Under Any Rational Loss
                 Calculation Methodology........................................................................... 10

           D.     Clal Also Satisfies the Requirements of Rule 23 ..................................... 13

    II.     OMAHA P&F'S COMPETING MOTION SHOULD BE DENIED................... 15

CONCLUSION..................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7547 Corp. v. Parker & Parsley Development Partners, L.P.*,
227 F.3d 211 (5th Cir. 1994) ..................................................................................................7

*Abrahamson v. Fleschner*,
568 F.2d 862 (2d Cir. 1977).....................................................................................................7

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .........................3, 4, 13

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)........................2, 5

*Dookeran v. Xunlei Ltd.*,
No. 18-CV-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ................................3, 13

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07–06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................6

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
262 F.R.D. 262 (S.D.N.Y. 2009) ...........................................................................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126, 129 (S.D.N.Y. 2011) ...............................................................................11, 13

*Gelles v. TDA Industries, Inc.*,
44 F.3d 102 (2d Cir. 1994)......................................................................................................8

*Gru v. Axsome Therapeutics, Inc.*,
1:22-cv-03925-LGS, Dkt. No. 28 .............................................................................................3

*Harvey M. Jasper Ret. Tr. v. Ivax Corp.*,
920 F. Supp. 1260 (S.D. Fla. 1995) .......................................................................................7

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
398 F. Supp. 2d 244 (S.D.N.Y. 2005)......................................................................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .................................................................................................12

*In re Delcath Systems, Inc. Securities Litigation*,
1:13-cv-03116-LGS, Dkt. No. 51 .............................................................................................3

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ....................................13

*In re Penn Central Securities Litigation*,
494 F.2d 528 (3d Cir. 1974)..........................................................................................................8

*In re Petrobras Secs. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015).......................................................................................14

*In re Tronox, Inc.*,
2010 U.S. Dist. LEXIS 67664 (S.D.N.Y. June 28, 2010).....................................................9, 10

*Isquith by Isquith v. Caremark Int'l, Inc.*,
136 F.3d 531 (7th Cir. 1998) .................................................................................................9, 10

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................................13

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ..............................................................................................4, 13

*Mayer v. Oil Field Sys. Corp.*,
721 F.2d 59 (2d Cir. 1983)............................................................................................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...................2, 5

*Pilgaonkar v. Kitov Pharmaceuticals Holdings Ltd.*,
1:17-cv-00917-LGS, Dkt. No. 27 ................................................................................................3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................................2, 5

*Rathborne v. Rathborne*,
683 F.2d 914 (5th Cir. 1982) ........................................................................................................7

*Realmonte v. Reeves*,
169 F.3d 1280 (10th Cir. 1999) ....................................................................................................8

*Rubenstahl v. Philip Morris Int'l, Inc.*,
No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309
(D.N.J. Feb. 13, 2019)................................................................................................................14

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015)....................................................................................11, 12

*Sayce v. Forescout Technologies, Inc.*,
No. 20-cv-00076-SI, 2020 WL 6802469 (N.D. Cal. July 22, 2020) ..................................12, 13

*SEC v. National Securities, Inc.*,
   393 U.S. 453 (1969).................................................................................................8

*Zwick Partners, LP v. Quorum Health Corporation*,
   3:16-cv-2475 (M.D. Tenn.).....................................................................................10

**Statutes**

15 U.S.C. §78u-4 ......................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 23........................................................................................ *passim*

Lead Plaintiff Movant Clal[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 23); and in opposition to the competing motion of City of Omaha Police and Firefighters Retirement System ("Omaha P&F") (Dkt. No. 20).

## PRELIMINARY STATEMENT

The PSLRA requires that the Court appoint as Lead Plaintiff in this Action the "most adequate plaintiff" of the Class within the meaning of the statute. 15 U.S.C. §78u-4(a)(3)(B)(i). Pursuant to the PSLRA, a movant is entitled to a rebuttable presumption that it is the "most adequate plaintiff" if the movant both: (i) has the greatest financial interest in the outcome of the litigation among the eligible movants seeking appointment; and (ii) satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The "most adequate plaintiff" presumption may only be rebutted "upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Of the two competing movants before the Court, only Clal meets the requisite statutory criteria for appointment as Lead Plaintiff. First, Clal indisputably possesses the largest financial interest in this litigation by any relevant metric, having: (1) purchased or acquired a total of 5,253,956 shares of Cognyte stock during the Class Period; (2) spent $142,963,834 on its Class Period purchases and acquisitions; (3) retained 4,543,715 shares of Cognyte stock when the investing public learned of the Defendants' malfeasance; and (4) incurred losses of ***$56,514,946***

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in Clal's moving brief. *See* Dkt. No. 25.

calculated on either a last-in, first-out ("LIFO") basis, or a first-in, first-out ("FIFO") basis, on its purchases and acquisitions of Cognyte shares. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004). The table below sets forth the respective financial interests of the competing movants:

| | Quantity | Amount Expended | Retained Shares** | LOSS | |
| --- | --- | --- | --- | --- | --- |
| | | | | FIFO | LIFO |
| Clal: Spin-Off Acquisitions | 4,367,015 | ($122,320,090) | 3,660,471 | ($46,715,351) | ($54,292,441) |
| Clal: Open Market Purchases | 886,941 | ($20,643,744) | 883,244 | ($9,799,595) | ($2,222,505) |
| **Clal: Combined** | 5,253,956 | ($142,963,834) | 4,543,715 | ($56,514,946) | ($56,514,946) |
| | | | | | |
| **Omaha P&F** | 104,330* | ($2,375,129) | 93,745 | ($1,650,095) | ($1,650,095) |
| *Notes:* | *All of Omaha P&F's shares were acquired via open market purchases.* | | | | |
| | **Denotes shares retained through at least one of the three corrective disclosures of (1) December 16, 2021, (2) April 5, 2022, and (3) June 28, 2022.* | | | | |

As the table reflects, Clal's financial interest in this litigation is significantly larger than that of Omaha P&F, the only competing movant. Clal purchased or acquired more than *5.25 million* shares of Cognyte stock during the Class Period, more than fifty times as many as Omaha P&F (104,330). Clal spent more than *$142.96 million* on its purchases, more than sixty times as much as Omaha P&F ($2,375,129). Clal retained more than *4.54 million shares* of Cognyte stock when the Defendants' alleged fraud was revealed to the investing public, more than 48 times as many as Omaha P&F (93,745). Finally, Clal's investment loss of *$56,514,946* is more than 34 times the size of Omaha P&F's ($1,650,095). Even if the Court were to disregard losses that Clal incurred on the shares it acquired through Verint's spin-off of Cognyte in February 2021 (and as discussed *infra* at pp. 5-10, it should not) and consider only the losses it incurred in connection with open market purchases of Cognyte shares during the Class Period, Clal's loss on market

purchases alone would still be **$9,299,595** on a FIFO basis, or **$2,222,505** on a LIFO basis—still significantly larger than Omaha P&F's losses of only $1,650,095.  It is thus beyond cavil that Clal possesses the largest financial interest in this litigation within the meaning of the PSLRA among the competing movants, and thus satisfies the first of the statutory criteria for appointment as Lead Plaintiffs.

Second, in addition to its significant financial interest in this litigation, Clal strongly satisfies the adequacy and typicality requirements of Rule 23.  Clal is aware of no conflict between its interests and those of the Class, its losses incurred give it a sufficient stake in the outcome of this Action to ensure vigorous advocacy, and, in Pomerantz, Clal has retained qualified and experienced counsel.  *See Dookeran v. Xunlei Ltd.*, No. 18-CV-467 (RJS), 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018) (appointing Pomerantz as Lead Counsel in PSLRA action); *Gru v. Axsome Therapeutics, Inc.*, 1:22-cv-03925-LGS, Dkt. No. 28 (same); *Pilgaonkar v. Kitov Pharmaceuticals Holdings Ltd.*, 1:17-cv-00917-LGS, Dkt. No. 27 (same); *In re Delcath Systems, Inc. Securities Litigation*, 1:13-cv-03116-LGS, Dkt. No. 51 (same).  Clal, like all Class members, purchased or acquired Cognyte securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon disclosure of those misrepresentations or omissions.  *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018).

Possessing the largest financial interest of any movant and having established its adequacy and typicality within the meaning of Rule 23, Clal is entitled to the statutory presumption that it is the "most adequate plaintiff" of the Class within the meaning of the PSLRA.  Because Clal is neither subject to unique defenses nor otherwise unable to fairly and adequately protect the interests of other Class members, there is nothing to rebut the presumption in favor of its

3

appointment as Lead Plaintiff.  Clal negotiated with counsel a retainer in this case that provides for an attorney's fee significantly lower than the one-third fee that is common in this Circuit, thereby further demonstrating its adequacy.  Clal respectfully offers to submit the retainer for the Court's *in camera* review, should the Court request it.

By contrast, Omaha P&F is not eligible for appointment as Lead Plaintiff in the Action. Because Clal possesses the largest financial interest in the Action, it is self-evident that Omaha P&F cannot claim to possess the largest financial interest.  This failure to meet the first of the statutory criteria alone mandates denial of Omaha P&F's motion.

Accordingly, for the reasons set forth herein, Clal respectfully submit that the Court should grant its motion in its entirety and deny the competing motion of Omaha P&F.

**ARGUMENT**

**I.       THE COURT SHOULD APPOINT CLAL AS LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *Kobe Steel*, 2018 WL 1634872, at \*3; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Clal.

**A.       Clal Has the Largest Financial Interest of any Movant**

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For the purposes of PSLRA lead plaintiff

4

appointment, courts in this Judicial District and the Second Circuit generally assess financial

interest with reference to the four *Lax* factors: (1) shares purchased or acquired; (2) funds

expended; (3) shares retained when the alleged fraud was revealed; and (4) monetary losses. *See*,

*e.g.*, *Chahal*, 2018 WL 3093965, at *4; *Nurlybaev*, 2017 WL 5256769, at *1; *Pirelli Armstrong*

*Tire*, 229 F.R.D. at 404-05.

As the chart at p. 2 reflects, Clal's financial interest is far larger than that of the only

competing movant, Omaha P&F, assessed with reference to ***any*** *Lax* factor.  Clal purchased or

acquired more than 5.25 million shares of Cognyte stock during the Class Period, whereas Omaha

P&F acquired only 104,330.  Clal expended a total of $142,963,834 on its Class Period purchases

of Cognyte stock during the Class Period, whereas Omaha spent only $2,375,129.  Clal retained

more than 4.54 million shares when the Defendants' alleged fraud was disclosed to the market,

while Omaha P&F retained only a total of 93,745  shares  pursuant to a corrective disclosure.

### B.    All of Clal's Losses Should Be Considered in Assessing Its Financial Interest

As a threshold matter, ***all*** of Clal's losses should be considered for the purposes of

determining its financial interest in this litigation, including those incurred on shares that Clal

acquired as a consequence of Cognyte's spin-off from Verint in February 2021, following which

Verint focused on customer engagement, while Verint's former intelligence and cyber activities

were consolidated as the operations of the new company Cognyte.  *See* Response Declaration of

Jeremy A. Lieberman ("Lieberman Response Decl."), Ex. A.

***First***, Clal's acquisitions via the spin-off are plainly covered by the Class definition set

forth in Omaha P&F's own Complaint (Dkt. No. 1) and the notice published by their counsel (Dkt.

No. 22-3).  The Complaint plainly states that this Action is on behalf of "Class members [who]

purchased ***or acquired*** Cognyte common stock" during the Class Period.  *See* Dkt. No. 1 ¶ 32

5

(emphasis added).  Clal received its shares by operation of the spin-off, pursuant to which Cognyte stock began trading on the NASDAQ on February 2, 2021—the first day of the Class Period.  *See id.* ¶ 14.  Cognyte's acquisitions pursuant to the spin-off were thus acquisitions during the Class Period under the plain language of the Complaint.  Nor did the notice of pendency of this Action, published by Omaha P&F's counsel pursuant to the PSLRA (the "Notice") and setting forth the relevant Class Period in this Action, contain any language that would exclude from the Class investors who acquired shares by virtue of the spin-off.  *See* Dkt. No. 22-3.  Rather, reviewing the Notice and the Complaint that it referenced, any investor who received Cognyte shares pursuant to its spin-off from Verint would obviously understand themselves to be included within the Class definition.

Given the terms set forth in Omaha P&F's own Complaint and published Notice, Clal respectfully submits that it is difficult to credit any argument by Omaha P&F at this stage of the litigation in favor of a more restrictive Class definition—*i.e.*, one that includes only investors who purchased on the open market and excludes investors, like Clal, who acquired shares by virtue of the Company's spin-off from Verint.  Clal is far from uniquely situated in this respect, as many Class members would have received Cognyte shares via the spin-off.  Indeed, according to Clal's expert's estimate, excluding the tens of millions of shares that investors would have acquired via the spin-off from the Class definition would immediately eliminate as much as ***30%*** of the Class in this Action.  For Omaha P&F to advance such an argument now smacks of gamesmanship.  "Indeed, it is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only."  *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07–06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008).  Clal respectfully submits that any demonstrated readiness to exclude

6

potential Class members at the outset of this Action raises valid questions about Omaha P&F's readiness to serve as Lead Plaintiff—a fiduciary role that will require Omaha P&F to put the Class's interests ahead of its own.

**Second**, Clal's acquisitions of Cognyte shares pursuant to its spin-off from Verint qualify as "purchases" under the meaning of the federal securities laws under the "fundamental change" doctrine, which provides that "where a securities transaction results in a fundamental change in the nature of a shareholder's investment, leaving the plaintiff with shares that represent a participation in a wholly new and different enterprise, the plaintiff may be considered a purchaser or seller." *Rathborne v. Rathborne*, 683 F.2d 914, 921 (5th Cir. 1982). *See also Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977) ("there must be such significant change in the nature of the investment or the investment risks as to amount to a new investment"). Accordingly, courts routinely find that when an investor acquires securities via operation of a corporate transaction (*e.g.*, a spin-off or merger) rather than purchasing shares on the market, those acquisitions qualify as "purchases". *See, e.g.*, *Mayer v. Oil Field Sys. Corp.*, 721 F.2d 59, 65-66 (2d Cir. 1983) (where investor was forced to exchange her previous ownership interests in LP for common stock in a new corporation pursuant to an exchange agreement, her investment had fundamentally changed); *Harvey M. Jasper Ret. Tr. v. Ivax Corp.*, 920 F. Supp. 1260, 1264, 1268 (S.D. Fla. 1995) (certifying class of investors who purchased acquiring company's shares or acquired them pursuant to the merger and brought §10(b) claims for alleged misstatements, starting with the preliminary proxy, which inflated acquiring company's stock price until revelation of poor results); *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 227 F.3d 211, 226-27 (5th Cir. 1994) (holding that investors have standing under section 10(b) "as . . . 'forced sellers'" when "investors of merged companies . . . can show a substantial change in the nature of their investments."); *Harvey M.*

*Jasper Ret. Tr. v. Ivax Corp.*, 920 F. Supp. 1260, 1264, 1268 (S.D. Fla. 1995) (certifying class of investors who purchased acquiring company's shares or acquired them pursuant to the merger and brought §10(b) claims for alleged misstatements, starting with the preliminary proxy, which inflated acquiring company's stock price until revelation of poor results). *See also SEC v. National Securities, Inc.*, 393 U.S. 453, 467 (1969) (fraudulent statements made to induce shareholders to exchange their shares for those of another company in the context of a merger constitutes the "purchase" of securities "in a way not at all unlike that involved in a typical cash sale or share exchange"); *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999) ("[w]hen an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a 'purchase or sale' for purposes of bringing a Rule 10b-5 action."); *Gelles v. TDA Industries, Inc.*, 44 F.3d 102, 104 (2d Cir. 1994) ("[T]he simple exchange of shares in a merger qualifies as a purchase or sale when shareholders become shareholders in a new company as a result of . . . deception[.]") (citations and quotations omitted); *In re Penn Central Securities Litigation*, 494 F.2d 528, 534 (3d Cir. 1974) ("It clearly effectuates the remedial purposes of the securities acts, therefore, to extend their protections to such a share exchange.").

Here, pursuant to the terms of the spin-off, Verint shareholders received one share of Cognyte common stock for each of their shares of Verint common stock. *Id.* By virtue of its holdings of Verint shares, Clal thus received 4,367,015 Cognyte shares upon completion of the spin-off. The Cognyte spin-off separated Verint's intelligence and cyber activities from its customer engagement activity, all of which had previously comprised the combined business activities of a single company. Significantly, as a consequence of the spin-off, Cognyte was registered in Israel, while Verint remained registered in the U.S. Accordingly, while Clal previously held shares of a single U.S. company with cyber/intelligence and customer engagement

8

businesses, following the spin-off, Clal found itself owning shares in two companies—one U.S. and one Israeli—with significantly different business profiles. Given the fundamental change in the nature of Clal's investment, its acquisitions of Cognyte shares via the spin-off clearly qualify as purchases under the federal securities laws, and its losses on those shares are recoverable and thus comprise part of its financial interest in this litigation.

Only a handful of courts have found that shares acquired by virtue of a corporate spin-off did not qualify as "purchases" under the federal securities laws. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005); *In re Tronox, Inc.*, 2010 U.S. Dist. LEXIS 67664, at *47 n.160 (S.D.N.Y. June 28, 2010); *Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534 (7th Cir. 1998). However, these cases are readily distinguishable, as each involved the distribution of shares of another separately existing company as a dividend, meaning that the companies at issue would operate exactly as they did prior to the spin-off, the distribution did ***not*** fundamentally change the investors' holdings. *See Adelphia*, 398 F. Supp. 2d at 247 n.2 (transactions at issue were distribution of shares of preexisting subsidiary, previously owned by defendant corporation, as a stock dividend, rather than issuance of shares in a new company); *Tronox*, 2010 U.S. Dist. LEXIS 67664, at *47 n.160 (same); *Isquith*, 136 F.3d at 537 (finding fundamental change doctrine inapplicable where transaction at issue was a spin-off of shares of a preexisting subsidiary, issued as a dividend to shareholders of former parent, because "the amount of assets owned by the members of the class . . . was unchanged") Here, by contrast, Clal's investment ***did*** fundamentally change as a consequence of the spin-off (as discussed above). Unlike in *Adelphia*, *Tronox*, and *Isquith*, the operations that would come to form Cognyte had previously existed as a business unit within Verint, and subsequently entered the market as an

9

independent company with a separate and distinct business profile, incorporated in a different country.

Indeed, in the recent action *Zwick Partners, LP v. Quorum Health Corporation*, 3:16-cv-2475 (M.D. Tenn.) ("*Quorum*"), the Defendants twice sought to exclude from the class investors who acquired Quorum shares in a spin-off from its former parent—first in opposing class certification (*see* Lieberman Response Decl. Ex. B at 18), and again in moving for summary judgment, citing *Adelphia*, *Tronox*, and *Isquith* in ostensible support of their position. *See* Lieberman Response Decl. Ex. C at 37. In response to the defendants' arguments at summary judgment, the Lead Plaintiff in *Quorum* argued that the spin-off in question had fundamentally changed the investment of these shareholders, such that their losses qualified as purchases under the federal securities laws. *See* Lieberman Response Decl. Ex. D at 39 n.9. The court certified a class which definitionally included investors who acquired Quorum shares pursuant to the spin-off at issue (*see* Lieberman Response Decl. Ex. E at 16) and ultimately endorsed a settlement plan of allocation that expressly included acquirers of shares via spinoff. *See* Lieberman Response Decl. Ex. F at 2.

### C. Clal Also Has the Largest Financial Interest Assessed Only with Reference to Open Market Purchases Under Any Rational Loss Calculation Methodology

Even assuming *arguendo* that the Court were to disregard Clal's acquisitions via the spin-off and consider only its open market purchases of Cognyte stock during the Class Period, compared to Omaha P&F, Clal would still have purchased significantly more Cognyte shares (886,941 vs. 104,330) and incurred significantly larger losses calculated on either a FIFO basis ($9,799,595 vs. $1,650,095) or a LIFO basis ($2,222,505 vs. $1,650,095). *See* Lieberman Response Decl. Ex. G.

Nor is Clal aware of any valid loss calculation methodology by which Omaha P&F may claim to possess a larger loss than Clal. In assessing financial interest for the purposes of appointing lead plaintiffs in PSLRA actions, courts overwhelmingly calculate losses by using either a FIFO or LIFO calculation methodology. Both FIFO and LIFO are "matching" methodologies, in which, in a situation "where there is a pre-existing inventory of stock followed by purchases and sales during the class period[,]" each sale of a security is matched back to an earlier purchase (or acquisition) of the same security in order to determine the economic impact of the sale—*i.e.*, to match a sale to a prior purchase/acquisition. Under FIFO, the first security acquired (the "first-in") is assumed to be the first security sold (the "first-out"). *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 265 (S.D.N.Y. 2009). *See also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 n.5 (S.D.N.Y. 2015). By contrast, under LIFO, the security most recently purchased/acquired (the "last-in") is assumed to be the first security sold. *Id.*

As set forth above, Clal's losses are significantly larger than Omaha P&F's matched on either a FIFO or LIFO basis. If the first shares that Clal sold during the Class Period are presumed to be those that it acquired earliest and subsequent sales are likewise matched to preceding purchases on the same basis (FIFO), then its total losses are $56,514,946, its losses from its spin-off acquisitions alone are $46,715,351, and its losses on its open market purchases are $9,2799,595. *See* Lieberman Decl. Ex. G. Conversely, if the first shares that Clal sold during the Class Period are presumed to be those it acquired latest and subsequent sales are matched to earlier purchases on the same basis (LIFO), then its total losses are $56,514,946, its losses from its spin-off acquisitions alone are $54,292,441, and its losses on its open market purchases are $2,222,505. *Id.* On either a FIFO or LIFO basis, Omaha P&F's total losses—all of which were incurred only

11

on market purchases—would be only $1,650,095. *Id.* There is simply no valid FIFO or LIFO methodology by which Omaha P&F can claim a larger loss than Clal with reference to either total Class Period acquisitions of Cognyte stock or any subset thereof.

While the PSLRA does not prescribe any single calculation methodology, it is well settled that courts should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Here, Clal is not aware of any rational methodology by which Omaha P&F may claim a larger loss than Clal. For example, if Omaha P&F were to advocate for a calculation methodology that matched sales of Cognyte stock to shares purchased *after* those sales, that methodology would not be rational. How can an investor claim losses premised on the price of a share of stock that it did not actually own at the time of sale? Clal respectfully urges the Court to assess the competing movants' losses as calculated pursuant to conventional FIFO and/or LIFO matching methodologies and to reject any effort to manipulate the competing loss figures through novel or unsupported methodologies.

Indeed, the fact that Clal—unlike Omaha P&F—incurred losses in connection with both its acquisitions of Cognyte stock pursuant to the spin-off *and* on its open market purchases further weighs in favor of its appointment. *Sayce v. Forescout Technologies, Inc.*, No. 20-cv-00076-SI, 2020 WL 6802469 (N.D. Cal. July 22, 2020), is instructive. There, after consolidating related actions alleging overlapping theories of liability and class periods relating to the announcement of a merger, resulting in a consolidated action with a single class period, the court ultimately appointed class leadership that included investors who had claimed losses in connection with purchases made both before *and* after the announcement of the merger, finding that "the class would be best represented by lead plaintiffs who . . . purchased securities during the earlier portion of the class period" as well as the later portion—that is, during both the pre- *and* post-merger

12

announcement portions of the class period. *Id.* at *6. Noting the "differences in timing of when [the competing movants] purchased their stock" (*id.* at *8), the court found that such leadership would "best protect the interests of the class should issues later arise specific to" various portions of the Class Period—for example, to the extent that statements made either before or after the announcement of the merger of were "later found to be non-actionable." *Id.* at *6, *8. Here, similarly, the nature and timing of Clal's investments in Cognyte stock would likewise protect the Class in this Action to the extent that issues specific to various portions of the Class Period arise, and/or statements made therein are found to be non-actionable.

### D.    Clal Also Satisfies the Requirements of Rule 23

Clal also readily satisfies the typicality and adequacy requirements of Rule 23. In appointing a lead plaintiff, the Court must determine whether the movant has made a *prima facie* showing of typicality and adequacy. *Kobe Steel*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.

Clal easily satisfies the typicality requirement of Rule 23. Clal's claims are typical of those of other Class members because, like other Class members, Clal purchased Cognyte securities during the Class Period and was harmed by the misrepresentations and/or omissions that form the basis of the allegations in the Action. Clal's claims are thus typical of the Class. *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010).

Clal has also demonstrated its adequacy to serve as Lead Plaintiff in this Action. First, as set forth *supra*, Clal has a very significant financial interest in the outcome of this litigation—specifically, its tens of millions of dollars in losses incurred as a result of the Defendants' alleged misconduct—that will ensure its vigorous and adequate prosecution of the Class's claims. *Foley*, 272 F.R.D. at 131; *see also Dookeran*, 2018 WL 1779348, at *2 (same). Second, Clal has no

13

conflicts with other Class members.  To the contrary, Clal's interests are perfectly aligned with the Class's interest in maximizing a recovery for the Class due to the alleged fraud in this Action. Indeed, the fact that Clal has significant investment losses in connection with both its acquisitions of Cognyte shares via the spin-off *and* its purchases of Cognyte shares on the open market will strongly incentivize it to pursue a theory of recovery that will benefit all Class members, rather than merely market purchasers.  Omaha P&F, by contrast, cannot say the same.

Second, Clal has demonstrated its adequacy by negotiating with counsel a retainer in this case that provides for an attorney's fee significantly lower than the one-third amount regularly endorsed in this Circuit. *See*, *e.g.*, *In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015) (holding movant to be adequate, finding that it "vetted its chosen counsel extensively and negotiated for a more favorable fee agreement"); *Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309, at *10 (D.N.J. Feb. 13, 2019) (finding movant to be adequate where it "demonstrated a willingness and ability to select competent class counsel, and to negotiate a reasonable retainer agreement with that counsel.").  Clal respectfully offers to submit the retainer for the Court's *in camera* review.

Third, Clal has demonstrated its adequacy by selecting qualified counsel, Pomerantz, with substantial experience litigating securities class actions.  *See* Dkt. No. 26-4.  Since 2018 alone, Pomerantz has secured a $3 billion recovery on behalf of investors in Petróleo Brasileiro S.A. - Petrobras securities, the largest settlement ever in a class action involving a foreign issuer; an $80 million settlement on behalf of Yahoo! Inc. investors; a $110 million settlement on behalf of investors in Fiat Chrysler Automobiles N.V.; and a $90 million settlement on behalf of investors in Altria Group, Inc.  *See id.*

14

For all of the foregoing reasons, Clal strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's strong presumption of being the Lead Plaintiff.

\*\*\*\*\*

To overcome the strong presumption entitling Clal to appointment as Lead Plaintiff, the PSLRA requires "*proof*" that the presumptive Lead Plaintiff is subject to unique defenses or otherwise inadequate to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists with respect to Clal and any suggestions to the contrary should be rejected as mere speculation.

## II.    OMAHA P&F'S COMPETING MOTION SHOULD BE DENIED

Omaha P&F may not be appointed Lead Plaintiff in this Action because it does not possess the largest financial interest in the Action and thus does not satisfy the first of the statutory criteria to be entitled for the "most adequate plaintiff" presumption. Here, as discussed above, Clal clearly possesses the largest financial interest in this Action by a massive margin. It is thus self-evident that Omaha P&F does not possess the largest financial interest. This fact alone suffices to mandate denial of its motions.

### CONCLUSION

For the foregoing reasons, Clal respectfully requests that the Court issue an Order: (1) appointing Clal as Lead Plaintiff for the Class; and (2) approving Clal's selection of Pomerantz as Lead Counsel for the Class.

Dated: May 11, 2023                          Respectfully submitted,

                                             POMERANTZ LLP

                                             */s/ Jeremy A. Lieberman*
                                             Jeremy A. Lieberman
                                             J. Alexander Hood II

15

Thomas H. Przybylowski
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

POMERANTZ LLP
Orly Guy
Eitan Lavie
HaShahar Tower
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

*Counsel for Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees & Independent Workers Ltd. and Proposed Lead Counsel for the Class*

16