**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CITY OF OMAHA POLICE AND
FIREFIGHTERS RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

                             Plaintiff,

    vs.

COGNYTE SOFTWARE LTD, ELAD
SHARON, AND DAVID ABADI,

                            Defendants.

---

Civil Action No. 1:23-cv-01769-LGS

**CITY OF OMAHA POLICE AND FIREFIGHTERS RETIREMENT SYSTEM'S
MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY CLAL INSURANCE
COMPANY LTD., CLAL PENSION AND PROVIDENT LTD., AND ATUDOT PENSION
FUND FOR EMPLOYEES & INDEPENDENT WORKERS LTD. FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.      OMAHA P&F IS THE PRESUMPTIVE LEAD PLAINTIFF..........................................2

        A.      Clal's Spin-Off Shares Were Not "Purchased" Within the Meaning of
                Section 10(b) and There Is No Claim with Respect to the Spin-off Shares ...........4

        B.      Clal's Spin-Off Shares Were Not Acquired During the Class Period ....................7

        C.      After Correcting Clal's Error, It Is Clear that Omaha P&F Has a Greater
                Loss……………………………………………………………………...…..8

II.     OMAHA P&F SHOULD ALSO BE APPOINTED LEAD PLAINTIFF
        BECAUSE CLAL IS INADEQUATE ...................................................................8

        A.      Clal Is a "Net Seller" that Profited from the Alleged Fraud, Rendering It
                Atypical and Inadequate ......................................................................8

        B.      Clal's Application Is Materially Misleading...........................................................10

III.    OMAHA P&F IS ADEQUATE AND TYPICAL UNDER RULE 23 ............................11

CONCLUSION ...............................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Batter v. Hecla Mining Co.*,
No. 19-CV-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...............................9

*Birnbaum v. Newport. Steel* Corp.,
193 F.2d 461 (2d Cir. 1952)........................................................................................................4

*Born v. Quad/Graphics, Inc.*,
No. 19-CV-10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ...................................9

*Boyd v. NovaStar Fin., Inc.*,
No. 07-0139, 2007 WL 2026130 (W.D. Mo. July 9, 2007)...................................................3, 8

*Colan v. Cutler-Hammer, Inc.*,
812 F.2d 357 (7th Cir. 1987) ......................................................................................................7

*Cook v. Allergan PLC*,
No. 18 CIV. 12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ..........................................8

*Hedick v. Kraft Heinz Company*,
No. 19-CV-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .........................................3, 7, 8

*In re Adelphia Commc'ns. Corp. Sec & Derivative Litig.*,
398 F. Supp. 2d 244 (S.D.N.Y. 2005).............................................................................1, 4, 5

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007)...............................................................................................9

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) ............................................................................................10

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................................................................3

*In re Evolus Inc. Sec. Litig.*,
No. 20 CIV. 8647, 2021 WL 4251957 (S.D.N.Y. Sept. 17, 2021)............................................3

*In re KIT Digital, Inc. Sec. Litig.*,
    293 F.R.D. 441 (S.D.N.Y. 2013) ............................................................................................2

*In re Mirant Corp. Sec. Litig.*,
    No. 1:02-cv-01467, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ....................................2, 6

*In re Tronox, Inc. Sec. Litig.*,
    No. 09 CIV. 6220, 2010 WL 2835545 (S.D.N.Y June 28, 2010) .......................................1, 6

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    No. CIV A 07-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...........................................10

*Isquith by Isquith v. Caremark Int'l, Inc.*,
    136 F.3d 531 (7th Cir. 1998) ...........................................................................................2, 6

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) .......................................................................................10

*Rodriguez v. DraftKings, Inc.*,
    No. 21 CIV. 5739, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .......................................10

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(3)(B)(i) .................................................................................................................1
    §78u-4(a)(3)(B)(iii)(II) ....................................................................................................8, 9
    §78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................................8
    §78u-4(a)(3)(B)(v) .............................................................................................................11

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................1, 2, 8, 11

**Other Authorities**

HAZEN: LAW OF SECURITIES REGULATION §12:26. IDENTIFYING PURCHASES AND
    SALES UNDER RULE 10B-5—SPIN-OFF TRANSACTIONS, 3 ...................................................6, 7

## **SUMMARY OF ARGUMENT**

Presently before the Court are two competing motions for appointment as lead plaintiff and approval of lead counsel in a securities class action asserting violations of Section 10(b) and 20(a) of the Exchange Act.[1]  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court must appoint the movant with the largest financial interest as along as that movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(i).  Applying the foregoing process, the Court should appoint the City of Omaha Police and Firefighters Retirement System ("Omaha P&F") as lead plaintiff.  Omaha P&F has the largest loss of any movant, over $1.65 million, and is otherwise adequate and typical.

The competing movant, Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees & Independent Workers Ltd. (collectively, "Clal"), claims a loss of approximately $56.5 million.  However, Clal's claimed loss is completely indefensible because it is based on the highly misleading assertion that Clal purchased 4.36 million shares at a price of $28.01 on February 2, 2021.  *See generally* ECF No. 26-1.  In reality, Clal purchased ***$0 worth of Cognyte stock*** on February 2, 2021, not ***$122+ million dollars'*** worth as indicated in Clal's motion papers.  The 4.36 million shares relied on by Clal in its damages calculation were ***given*** to it (at no cost) as a dividend issued by Verint Systems, Inc. ("Verint") to all shareholders who held Verint stock as of close of business on January 25, 2021.

It is black-letter law that Clal's receipt of spin-off shares from Verint did not constitute a "purchase" under Section 10(b) of the Exchange Act.  *See, e.g.*, *In re Adelphia Commc'ns. Corp. Sec & Derivative Litig.*, 398 F. Supp. 2d 244, 257 (S.D.N.Y. 2005); *In re Tronox, Inc. Sec. Litig.*,

---

[1]      Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as in Omaha P+F's memorandum filed in support of its motion.  ECF No. 21.

No. 09 CIV. 6220, 2010 WL 2835545, *11 n.160 (S.D.N.Y June 28, 2010); *Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 536 (7th Cir. 1998); *In re Mirant Corp. Sec. Litig.*, No. 1:02-cv-01467, 2008 WL 11334395, *12 (N.D. Ga. Aug. 5, 2008).  Accordingly, these spin-off shares do not count toward damages because there is no possible recovery and because they fall outside the definition of the Class.

Correcting for this error, ***Clal had a gain of over $1.9 million*** on its Class Period purchases of Cognyte shares, not a loss of any kind.  Therefore, Omaha P&F is presumptive and should be appointed lead plaintiff.

Furthermore, the Court should reject Clal's motion for leadership because Clal is neither adequate nor typical under Rule 23.  Clal ***substantially profited*** from the fraud alleged as both a "net seller" of Cognyte shares and a "net gainer" on its Class Period transactions in Cognyte shares.  Because it received millions of shares in the spin-off, Clal sold 4,367,015 more Cognyte shares than it bought during the Class Period, ***netting over $65.8 million*** from these transactions.  This renders Clal unlike other members of the Class and disqualifies Clal from serving as lead plaintiff.  Moreover, Clal's papers are materially misleading and wildly overstate its damages, begging the question whether Clal is able to effectively oversee this litigation.

Accordingly, the Court should deny Clal's competing motion and grant Omaha P&F's motion in full.

## **ARGUMENT**

## I.    **OMAHA P&F IS THE PRESUMPTIVE LEAD PLAINTIFF**

The movant with the largest financial interest is the presumptive lead plaintiff and must be appointed as long as it is otherwise adequate and typical.  The most important factor in assessing financial interest is a movant's loss.  *See, e.g.*, *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441,

445 (S.D.N.Y. 2013); *In re Evolus Inc. Sec. Litig.*, No. 20 CIV. 8647, 2021 WL 4251957, at *3 (S.D.N.Y. Sept. 17, 2021).   Losses are normally assessed by applying the Last-in-First-Out ("LIFO") methodology.  *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005). In assessing loss, "[c]ourts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018).  Furthermore, the court will not consider losses that fall outside the class definition.  *See Hedick v. Kraft Heinz Company*, No. 19-CV-1339, 2019 WL 4958238, *4-5, 8 (N.D. Ill. Oct. 8, 2019) (excluding losses on transaction that occurred before the class period when assessing largest financial interest); *see also Boyd v. NovaStar Fin., Inc.*, No. 07-0139, 2007 WL 2026130, *3 (W.D. Mo. July 9, 2007) (declining to consider losses on transactions not part of the class); *see id.*, n.3 (declining to consider transaction that occurred after the class period).

Here, Omaha P&F, with a loss of $1.65 million, has the largest financial interest.  Clal's assertion that it lost approximately $56.5 million is legally unsupportable because it is premised on the inclusion of 4.36 million spin-off shares that Clal received at no cost as a dividend from Verint.  These spin-off shares do not count toward damages because they were not "purchased" within the meaning of Section 10(b) of the Exchange Act, meaning there are no recoverable damages.  Furthermore, the 4.36 million shares fall outside the class definition because they were not "purchased" between February 2, 2021 and June 28, 2022.   Correcting for these legally indefensible errors, Clal had a gain on its purchase of Cognyte shares during the Class Period. Accordingly, Omaha P&F is the presumptive lead plaintiff and should be appointed lead plaintiff pursuant to the PSLRA.

A.     **Clal's Spin-Off Shares Were Not "Purchased" Within the Meaning of Section 10(b) and There Is No Claim with Respect to the Spin-off Shares**

This securities class action was brought against Defendants for violations of Section 10(b) and 20(a) of the Exchange Act, "on behalf of all **purchasers** of Cognyte common stock between February 2, 2021 and June 28, 2022, inclusive."  ECF No. 1, ¶1.  To state a claim under Section 10(b), a plaintiff must allege a material misstatement or omission "**in connection with the purchase or sale** of a security."  *In re Adelphia*, 398 F. Supp. 2d 244, 248.  Only a plaintiff who engages in a "purchase or sale" of securities has the right to bring a private damages action.  *Blue Chip Stamps v. Manor Drug* Stores, 95 S. Ct. 1917 (1975), expressly adopting the holding of *Birnbaum v. Newport. Steel* Corp., 193 F.2d 461, 464 (2d Cir. 1952).

Here, the 4.36 million shares that Clal claimed to have purchased in its damages analysis were not  "purchased" within the meaning of Section 10(b) of the Exchange Act; they were distributed as a dividend.  On January 15, 2021, Verint announced its plan to distribute 100 percent of its Cognyte shares to holders of Verint shares "after the close of business on February 1, 2021, the distribution date for the spin-off."[2]  According to this press release, "Verint will distribute to holders of Verint shares, **as a pro rata dividend**, one Cognyte share for every Verint share held on the close of business on January 25, 2021, the record date for the spin-off."  *Id.*  Notably, "Verint shareholders **do not need to take any action** to receive Cognyte shares to which they are entitled and **do not need to pay any consideration** or surrender or exchange Verint shares."  *Id*.  Moreover, "[t]he distribution generally should not be taxable to Verint shareholders for U.S. federal and

---

[2]      See Press Release, Verint Systems Inc, Verint Announces Record Date and Distribution Date for Spin-Off of Cognyte Software Ltd., Verint's Cyber Intelligence Solutions Business, Spin-Off Expected to Close on February 1, 2021, (January 15, 2021), https://www.businesswire.com/news/home/20210115005107/en/Verint-Announces-Record-Date-and-Distribution-Date-for-Spin-Off-of-Cognyte-Software-Ltd.-Verint%E2%80%99s-Cyber-Intelligence-Solutions-Business.

Israeli income tax purposes." *Id.*  In other words, Verint shareholders of record would be issued their pro rata Cognyte shares on February 1, 2021 (a day before the start of the Class Period) without having to outlay any funds.

It is black-letter law that the spin-off shares received by Clal were not "purchased" within the meaning of the securities laws.  Judge McKenna of this District examined the issue at length in *In re Adelphia*, 398 F. Supp. 2d 244.  In *Adelphia,* a portion of the putative class had received stock in the company at issue as a dividend paid on a different stock.  *Id*. at 257 ("some class plaintiffs did not purchase ABIZ shares on the market; rather, they were shareholders of ACC and acquired ABIZ stock as a dividend on January 11, 2002.").  Defendants argued that the receipt of the spin-off shares did not constitute a "purchase" within the meaning of Section 10(b) of the Exchange Act and the court agreed.  *See id*. at 257-260 (discussing framework established by Second Circuit precedent and ruling "this Court finds that those plaintiffs who were shareholders of ACC and received ABIZ stock as a dividend on January 11, 2002 did not engage in a 'purchase' within the scope of Section 10(b) . . . .  Thus, the Complaint is dismissed as to any purported class member who only received Adelphia Business stock as a dividend.").

Judge McKenna reasoned that the receipt of stock as a dividend was not a "purchase" because there was no investment decision.  No action was taken.  *Id.* at 260 ("plaintiffs did not participate in any sort of investment decision.  They made no election whether or not to receive ABIZ stock (instead of a cash dividend), nor did they have any choice as to how much ABIZ stock to receive in the dividend.  Like the plaintiff in *Shaw*, the Clal movants here did not "acquire something by [their] own act or agreement for a price . . . [and] performed no act, made no agreement . . . for the receipt of [their] rights.").  *Id.*  Judge McKenna further reasoned that the receipt of stock as a dividend is not the sort of transaction protected by Section 10(b).  *Id.* ("the

transaction at issue is not the type meant to be governed by 10(b).  Section 10(b) seeks to ensure that investors make decisions based on honest information and to prevent fraudulent information from impacting securities investment decisions.  Plaintiffs who received ABIZ stock as a dividend cannot argue that defendants' fraudulent or misleading statements prevented them 'from availing [themselves] of an informed judgment' in deciding to enter into a securities transaction because those plaintiffs never made an investment decision.").

Several other courts have reached the same conclusion as *Adelphia*.  In *Tronox*, Judge Scheindlin addressed the same issue and followed *Adelphia*, stating "KMG distributed Tronox Class B common stock to its investors as a dividend.  *See* Compl., ¶103.  Because plaintiffs who receive stock as a dividend do not participate in any sort of investment decision, they do "not engage in a 'purchase' within the scope of Section 10(b)."  *Tronox*, 2010 WL 2835545, *11 n.160.  Similarly, in *Isquith*, the court found that investors who had received shares in a spin-off had made no investment decision.  *Id.*, 136 F.3d 531, 534-5 and 537 ("To recapitulate: there was no forced sale, because only the form of the plaintiff's investment was changed; and anyway there was no reliance, no investment decision, because the plaintiff did not have a choice whether or not to accept the new stock."); *see also In re Mirant Corporation Securities Litigation*, No. 1:02-CV-1467, 2008 WL 11334395, (N.D. Ga. Aug. 5, 2008) (granting Defendants motion for partial summary judgment against individuals who received shares of Mirant stock as part of a dividend from the Southern Company because such individuals lack standing as they did not make an affirmative investment decision); HAZEN: LAW OF SECURITIES REGULATION §12:26. IDENTIFYING PURCHASES AND SALES UNDER RULE 10B-5—SPIN-OFF TRANSACTIONS, 3 Law Sec. Reg. §12:26.

These decisions apply here, where Clal received 4.36 million in Cognyte shares as a pro rata dividend from its Verint shares. *See* Jan. 15 Press Release. Clal made no investment decision, it simply received Cognyte stock as a dividend. *Id.*

### B.      Clal's Spin-Off Shares Were Not Acquired During the Class Period

Clal's spin-off shares are also not part of the Class and should therefore be excluded for purposes of calculating Clal's loss for this additional reason. The Class is defined as "all purchasers of Cognyte common stock between February 2, 2021 and June 28, 2022, inclusive." ECF No. 1, ¶1. According to Verint's January 15, 2021 press release, Verint planned to distribute the spin-off shares to Clal and other Verint shareholders of record after the close of business on February 1, 2021, the same day Verint expected this spin-off to close. Approximately two weeks later, on February 1, 2021, Verint announced that the spin-off closed, advising that Cognyte shares "will begin 'regular way' trading on NASDAQ on February 2, 2021."[3] Consequently, Clal received its spin-off shares on February 1, 2021. So, even if the Court were to consider Clal's spin-off shares as purchases, which they are not, these purchases occurred before the Class Period began, requiring them to be excluded from the loss calculation. *See, e.g.*, *Hedick v. Kraft Heinz Company*, 2019 WL 4958238, *4-5 (citing *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 370 (7th Cir. 1987)).[4]

---

[3]      *See* Press Release, Verint Systems Inc, Verint Celebrates 'Day One' as a Company Focused on Enabling Brands to Achieve Boundless Customer Engagement Following Completion of Cognyte Software Spin-Off, (February 1, 2021), https://www.verint.com/press-room/2021-press-releases/verint-celebrates-day-one-as-a-company-focused-on-enabling-brands-to-achieve-boundless-customer-engagement-following-completion-of-cognyte-software-spin-off/.

[4]      Clal's claimed losses are indefensible for the third reason that it did not pay $28.01 per share as suggested by its loss chart. Rather, Clal arbitrarily assigned the closing price from February 2, 2021 to its shares. *See* ECF No. 26-1. There is no basis to calculate Clal's losses using a "purchase" price of $28.01 when Clal did not pay any money for these shares.

### C.     After Correcting Clal's Error, It Is Clear that Omaha P&F Has a Greater Loss

Here, 4,367,015 shares out of 5,250,259 shares, or approximately 83% of the shares Clal reported, were not purchased under the meaning of Section 10(b) and are not part of the Class.  As such, Clal cannot claim a loss based on these shares for purposes of the PSLRA.  *Ophthotech Corp.*, 2018 WL 1307285, at *5; *Hedick*, 2019 WL 4958238, *4-5, 8; *NovaStar Fin., Inc.*, 2007 WL 2026130.

When Clal's Class Period transactions are correctly assessed, it does not even have a loss. Applying a LIFO analysis that matches Class Period purchases to Class Period sales shows that Clal had a gain of approximately $1.9 million.  *See* Corrected Clal Loss Chart attached to the Declaration of Thomas L. Laughlin, IV ("Laughlin Decl."), at Ex. A.  Moreover, Clal also sold millions of Cognyte shares during the Class Period that it received at no cost in the spin-off. Including the proceeds from these sales, Clal had a gain of $65.8 million during the Class Period. *See* Laughlin, Decl., Ex. B (analysis of all Clal Class Period transactions).

## II.    OMAHA P&F SHOULD ALSO BE APPOINTED LEAD PLAINTIFF BECAUSE CLAL IS INADEQUATE

Additionally, Omaha P&F should be appointed lead plaintiff because Clal is not adequate and typical within the meaning of Rule 23.  U.S.C. §78u-4(a)(3)(B)(iii)(II); *Cook v. Allergan PLC*, No. 18 CIV. 12089, 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  Clal is inadequate and atypical because it is a "net seller" and "net gainer," and because its application is materially misleading.

### A.     Clal Is a "Net Seller" that Profited from the Alleged Fraud, Rendering It Atypical and Inadequate

Clal is a "net seller" that profited from the alleged fraud, rendering it inadequate and unlike a typical Class member.  Clal is a net seller of Cognyte shares because it sold over five million

shares during the Class Period, yet purchased less than 900,000 shares.  *See* Laughlin Decl., Ex. B.  Clal is a net gainer on its transactions in Cognyte stock because it spent $20 million on Cognyte stock, but received over $86 million in proceeds from the sale of Cognyte stock, for a net gain of over $65.8 million during the Class Period.  *Id.*  These facts are disqualifying.

      "Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices."  *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (citations omitted); *see also Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020).  "If nothing else, status as a net gainer may 'subject a movant to unique defenses that render such plaintiff incapable of adequately representing the class.'"  *Id.* (quoting 15 U.S.C. §78u–4(a)(3)(B)(iii)(II)).  Even where there is just a "potential" that a lead plaintiff movant '"will be subject to unique defenses and will not fairly and adequately protect the interests of the class,' disqualification is appropriate."  *Batter v. Hecla Mining Co.*, No. 19-CV-05719 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020).

      Here, there is no question that Clal profited as a result of the inflated stock prices during the Class Period.  As discussed above, Clal received over 4.36 million shares of Cognyte when the Company was spun-off from its parent company.  *See* ECF No. 26-1.  Clal did not pay for these shares, but yet they sold all of them during the Class Period, while the price was artificially inflated, netting tens of millions of dollars in proceeds.  Clal is therefore clearly a net gainer that profited from Cognyte's alleged fraud.

      Given its massive gains on Cognyte stock, Clal will likely face unique defenses during litigation of this case.  These arguments would distract from the merits and harm the Class.  This alone is sufficient to disqualify Clal from serving as lead plaintiff.  *See Bausch & Lomb Inc.,* 244

F.R.D. 169, 173 (collecting cases); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("net sellers who are also net gainers should not be lead plaintiffs"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages").

### B.   Clal's Application Is Materially Misleading

Clal is further inadequate because its application is materially misleading.  Clal's combined loss chart exhibit and loss calculations, as well as each Certification and Schedule A, which Clal swore under penalty of perjury were "true and correct," affirmatively state that it "*purchased*" over 4.367 million Cognyte shares on February 2, 2021 at $28.01 per share (*see* ECF Nos. 26-1, 26-3).   In its brief, Clal expressly states that it "expended $142,929,245 on its purchases or acquisitions of its Cognyte stock."  ECF No. 25 at 8.  In fact, however, as discussed above, these shares were issued as a pro rata dividend to Clal in connection with Verint's spin-off of its Cognyte business at no cost to Clal.  Despite claiming to have spent over $122.32 million on its February 2, 2021 purchases, in fact, Clal paid *nothing* for these spin-off shares.  Correcting for this issue, Clal has a gain of at least $1.9 million on its Class Period purchases, with approximately $65.8 million in gains on other spin-off shares sold during the Class Period.  *See* Laughlin Decl., Exs. A and B.  The substantial gap between Clal's claimed loss of $56.5 million and reality raises serious questions about Clal's ability to prosecute this Action.  *See, e.g.*, *Rodriguez v. DraftKings, Inc.*, No. 21 CIV. 5739, 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007).

### III.    OMAHA P&F IS ADEQUATE AND TYPICAL UNDER RULE 23

Unlike Clal, Omaha P&F satisfies the Rule 23 inquiry.  It is a member of the Class and has claims that arise from the alleged misleading statements, it suffered economic injuries thereby, and it has no unique defenses that apply to it.  It is also adequate because it has no conflict of interest with the other members of the Class, it has a sufficient interest in the outcome of this case, having lost $1.65 million dollars as a result of Defendants alleged wrongdoing, and it has selected counsel that is qualified, experienced, and genuinely able to conduct this litigation.  *See* ECF No. 21 at 5-8.  Moreover, nothing in the record demonstrates that Omaha P&F is not adequate or typical.  Rather, the record confirms that Omaha P&F, which initiated this Action on behalf of itself and all other similarly situated Cognyte investors, is exactly the type of institutional lead plaintiff Congress intended to have the Court appoint for these types of actions.  Accordingly, Omaha P&F should be appointed lead plaintiff.

Because "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class," *see* 15 U.S.C. §78u-4(a)(3)(B)(v), Omaha P&F's selection of Scott+Scott to serve as Lead Counsel should likewise be approved.  Scott+Scott is an international law firm that specializes in securities class action cases throughout the country and has significant resources to litigate this case.  Scott+Scott consists of over 110 team members, including over 70 highly experienced attorneys.  Scott+Scott also includes a team of paralegals, legal assistants, and other support staff, including in-house investigators and an e-discovery litigation support staff.  *See* ECF No. 22-3 (firm résumé).

Scott+Scott also has a long track record of successfully leading, litigating, and resolving securities class actions in both state and federal courts, including in this District, and is actively litigating numerous such actions.  *See, e.g.*, *Pompano Beach Police and Firefighters Retirement*

*System v. Olo Inc.*, No. 22-cv-8228 (S.D.N.Y.); *Jochims v. Oatly Group AB*, No. 22-cv-6360 (S.D.N.Y.); *Zhou v. NextCure, Inc.*, No. 20-cv-7772 (S.D.N.Y.); *Abadilla v. Precigen, Inc.*, No. 20-cv-06936 (N.D. Cal.); *City of Birmingham Relief and Retirement System v. Acadia Pharmaceuticals Inc.*, No. 21- cv-762 (S.D. Cal.); *Golubowski v. Robinhood Markets*, No. 21-cv-9767 (N.D. Cal.); *Strezsak v. Ardelyx Inc.*, No. 21-cv-5868 (N.D. Cal.).

In addition, Scott+Scott's team has achieved several significant successes in other securities and complex class action matters. *See, e.g.*, *In re: Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.) (achieved over $2.3 billion in final-approved settlements); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) (recovered $504.5 million for investors who transacted in ISDAfix agreements).

Scott+Scott should therefore be appointed Lead Counsel to represent the Class.

## <u>CONCLUSION</u>

For the foregoing reasons, Omaha P+F respectfully requests that the Court grant its Motion and enter an Order: (1) appointing Omaha P+F as Lead Plaintiff on behalf of the Class; (2) approving Omaha P+F's selection of Scott+Scott as Lead Counsel; and (3) denying Clal's competing motion.

DATED:  May 11, 2023    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

         */s/ Thomas L. Laughlin, IV*
         Thomas L. Laughlin, IV
         Donald A. Broggi
         Rhiana L. Swartz
         Jonathan Zimmerman (*pro hac vice* forthcoming)
         The Helmsley Building
         230 Park Avenue, 17th Floor
         New York, NY 10169
         Telephone: (212) 223-6444
         Facsimile:  (212) 223-6334

tlaughlin@scott-scott.com
dbroggi@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Counsel for Lead Plaintiff Movant City of Omaha Police and Firefighters Retirement System and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV