**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF OMAHA POLICE AND FIREFIGHTERS RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br>                         Plaintiff, <br><br>    vs. <br><br> COGNYTE SOFTWARE LTD, ELAD SHARON, AND DAVID ABADI, <br><br>                        Defendants. | Civil Action No. 1:23-cv-01769-LGS |

**REPLY IN FURTHER SUPPORT OF CITY OF OMAHA POLICE AND
FIREFIGHTERS RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
AND IN OPPOSITION TO COMPETING MOTION**

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................... 2

I.      CLAL'S RELIANCE ON THE 4.36 MILLION SPIN-OFF SHARES IN
        ITS LOSS ANALYSIS IS UNSUPPORTABLE .................................................2

II.     CORRECTING CLAL'S ERRORS SHOWS THAT IT HAD A GAIN,
        NOT A LOSS OF ANY KIND .........................................................................4

        A.      Clal's Eleventh Hour Alternative Damages Analysis Is Untimely .........5

        B.      Clal's New Damages Analyses Continue to Overstate Its Losses ..........7

III.    CLAL IS INADEQUATE AND ATYPICAL ...................................................9

        A.      Clal Is a Net Seller and a Net Gainer .....................................................9

        B.      Clal's Materially Misleading Papers Are Disqualifying.......................10

CONCLUSION........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrada v. Atherogenics, Inc.*,
No. 05 Civ. 00061, 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)..............................................8

*Atanasio v. Tenaris S.A.*,
331 F.R.D. 21 (E.D.N.Y. 2019)................................................................................................7

*Batter v. Hecla Mining Co.*,
No. 19-CV-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...............................9

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 CIV. 1203, 2012 WL 2025850 (S.D.N.Y. May 31, 2012).............................................7

*Born v. Quad/Graphics, Inc.*,
No. 19-CV-10376 (VEC), 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ...................................9

*Boyd v. NovaStar Fin., Inc.*,
No. 07-0139-CV, 2007 WL 2026130 (W.D. Mo. July 9, 2007)...............................................5

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
No. 20-CV-10360 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021).....................................6

*Colan v. Cutler-Hammer, Inc.*,
812 F.2d 357 (7th Cir. 1987) ...................................................................................................3

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................9

*Hedick v. Kraft Heinz Co.*,
No. 19-CV-1339, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .............................................3, 5

*Hodges v. Immersion Corp.*,
2009 WL 5125917 (N.D. Cal. 2009) .......................................................................................9

*In re Able Lab'ys. Sec. Litig.*,
425 F. Supp. 2d 562 (D.N.J. 2006) ..........................................................................................6

*In re Adelphia Commc'ns. Corp. Sec & Derivative Litig.*,
398 F. Supp. 2d 244 (S.D.N.Y. 2005)......................................................................................4

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007)............................................................................................9

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. (S.D. Tex. 2002)..................................................................................................6

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ..........................................................................................7, 8

*In re Mirant Corp. Sec. Litig.*,
    No. 1:02-cv-01467, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008)...........................................4

*In re Texlon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)....................................................................................6

*In re Tronox, Inc. Sec. Litig.*,
    No. 09 CIV. 6220, 2010 WL 2835545 (S.D.N.Y June 28, 2010).............................................4

*Isquith by Isquith v. Caremark Int'l, Inc.*,
    136 F.3d 531 (7th Cir. 1998) ................................................................................................4

*Jochims v. Oatly Grp. AB*,
    No. 21 CIV. 6360 (AKH), 2021 WL 9599974 (S.D.N.Y. Dec. 6, 2021) ............................1, 10

*Micholle v. Ophthotech Corp.*,
    No. 17-CV-1758, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .............................................5

*Miller v. Dyadic Int'l, Inc.*,
    No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)............................................6

*Rathborne v. Rathborne*,
    683 F.2d 914 (5th Cir. 1982) ................................................................................................4

*Richardson v. TVIA, Inc.*,
    2007 WL 1129344 (N.D. Cal. April 16, 2007).........................................................................10

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ..........................................................................................9

*Rodriguez v. DraftKings, Inc.*,
    No. 21 CIV. 5739, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ..........................................10

*Singer v. Nicor, Inc.*,
    No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) .................................................6

**Statutes, Rules, and Regulations**

15 U.S.C.
    §78u-4(a)(3)(B)(iii)(II)(aa) ...................................................................................................2

## PRELIMINARY STATEMENT

Omaha P&F[1] should be appointed lead plaintiff of this securities class action. It is the presumptive lead plaintiff and is otherwise adequate and typical. *See e.g.*, *Jochims v. Oatly Grp. AB*, No. 21 CIV. 6360 (AKH), 2021 WL 9599974, at *3 (S.D.N.Y. Dec. 6, 2021).

Clal has no basis to dispute Omaha P&F's motion. Clal grandly claims to have expended $142,929,245 on Class Period purchases of Cognyte stock and to have lost $56.5 million. ECF No. 25 at 1, 8. But having reviewed Clal's opening papers, opposition, and proposed reply (ECF No. 32-1), it is clear that Clal's assertions regarding its losses are legally and factually baseless. The premise of Clal's loss analysis is that it can count 4.36 million shares it received (at no cost) as a dividend issued by Verint Systems, Inc. ("Verint") as Class Period "purchases," and that each of these shares should be treated as having been "purchased" at $28.01 for purposes of calculating Clal's purported loss. *See generally* ECF No. 29 at 4-8. Clal's assertion has three fatal flaws:

*First*, Clal did not even receive the spin-off shares during the Class Period. Rather, as stated in Verint's press release, Clal received the spin-off shares on February 1, 2021, a day before the start of the Class Period. Clal points to no evidence to the contrary. Therefore, Clal's purported losses on these are not recoverable in this case. Period.

*Second,* Clal has no basis to assert that the spin-off shares should arbitrarily be assigned a "purchase" price of $28.01. In three briefs, Clal never explains why the Court should accept this baseless assertion when, in fact, Clal did not pay anything for the spin-off shares.

*Third*, the case law unanimously holds that Clal's receipt of Cognyte shares as a dividend does not constitute a "purchase" within the meaning of Section 10(b) of the Exchange Act,

---

[1] Unless otherwise defined herein, all capitalized terms shall maintain the same meanings as those set forth in Omaha P&F's opening and opposition motion papers. ECF Nos. 21 and 29.

meaning, Clal does not have a cause of action. Clal has not cited a single decision holding otherwise; instead, it cites to a completely different, inapt, body of law related to mergers.

Correcting Clal's misstatements shows that Clal has millions of dollars in gains, not a loss. In its opposition and proposed reply, Clal backpedals away from the loss analysis in its opening papers and presents two alternative analyses. These should be rejected because they are untimely and unpersuasive. The PSLRA required Clal to put the basis for its leadership application in its motion; Clal cannot change positions now. Further, Clal's fallback loss analyses do not actually measure Clal's financial interest because they ignore the tens of millions of dollars in profits Clal earned by selling millions of shares of Cognyte during the Class Period.

Furthermore, Clal offers no substantive response to Omaha P&F's argument that it is inadequate and atypical because it is a net seller of Cognyte stock and a net gainer on its Class Period transactions. Again, it simply asks the Court to ignore the tens of millions of dollars of proceeds it earned on Class Period sales.

Finally, Clal does not respond to Omaha P&F's argument that the substantial factual inaccuracies in its motion papers render it inadequate.

Accordingly, Omaha P&F respectfully submits that its motion should be granted in full and Clal's motion should be denied.

## ARGUMENT

### I.  CLAL'S RELIANCE ON THE 4.36 MILLION SPIN-OFF SHARES IN ITS LOSS ANALYSIS IS UNSUPPORTABLE

Omaha P&F has a loss of $1.65 million and is the presumptive lead plaintiff. ECF Nos. 21 at 4; 22-2; 29 at 2-3; *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). As Omaha P&F pointed out in its opposition brief, Clal's claim to the contrary rests on the indefensible inclusion of 4.36

2

million shares received before the start of the Class Period as a dividend at no cost. ECF No. 29 at 1; 4-8. The full record confirms that Clal has no basis to include these shares in its loss analysis.

First, Clal acquired the 4.36 million shares before the Class Period. The Putative Class consists of "purchasers of Cognyte common stock between February 2, 2021 and June 28, 2022, inclusive." ECF No. 1, ¶1. Clal's acquisition of the spin-off shares does not fall in the Class Period because, per Verint's press release, it occurred on February 1, 2021, the "distribution date for the spin-off."[2] Clal has no response. In its proposed reply, Clal baldly asserts that it did receive the Cognyte shares on February 2, 2021 notwithstanding Verint's press release stating that Clal received the shares on February 1, 2021. ECF No. 32-1 at 13. There is no reason to credit Clal's unsupported assertion, which is contradicted by Verint's announcement. Thus, Clal's inclusion of the 4.36 million shares was improper because Clal indisputably could not recover losses on shares acquired outside the Class Period. *See, e.g.*, *Hedick v. Kraft Heinz Co.*, No. 19-CV-1339, 2019 WL 4958238, *4-5 (N.D. Ill. Oct. 8, 2019) (citing *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 370 (7th Cir. 1987)).

Second, Clal did not pay $28.01 for any of the 4.36 million spin-off shares it received, and there is no basis to treat $28.01 as the "purchase price" for purposes of Clal's loss calculation. Clal arbitrarily assigns a purchase price of $28.01 to the 4.36 million spin-off shares, seeking to portray a cashless transaction as a $122 million "purchase." ECF Nos. 25 at 8, 26-1, 26-3. Throughout three briefs, Clal never offers any authority justifying this approach.

---

[2]      *See* Press Release, Verint Systems Inc, Verint Announces Record Date and Distribution Date for Spin-Off of Cognyte Software Ltd., Verint's Cyber Intelligence Solutions Business, Spin-Off Expected to Close on February 1, 2021, (Jan. 15, 2021), https://www.businesswire.com/news/home/20210115005107/en/Verint-Announces-Record-Date-and-Distribution-Date-for-Spin-Off-of-Cognyte-Software-Ltd.-Verint%E2%80%99s-Cyber-Intelligence-Solutions-Business.

Third, Clal's receipt of spin-off shares does not constitute a purchase under the Exchange Act and Clal does not have a claim with respect to them. *In re Adelphia Commc'ns. Corp. Sec & Derivative Litig.*, 398 F. Supp. 2d 244, 257 (S.D.N.Y. 2005); *In re Tronox, Inc. Sec. Litig.*, No. 09 CIV. 6220, 2010 WL 2835545, at *11 n.160 (S.D.N.Y June 28, 2010); *Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 536 (7th Cir. 1998); *In re Mirant Corp. Sec. Litig.*, No. 1:02-cv-01467, 2008 WL 11334395, at *12 (N.D. Ga. Aug. 5, 2008).[3]

The law on this issue is unanimous. Indeed, the lead decision relied on by Clal, *Rathborne v. Rathborne*, 683 F.2d 914 (5th Cir. 1982), held shareholders who received stock as a "pro-rata distribution" based on their ownership of another stock – the issue presented here – were not purchasers under the Exchange Act. *Id.* at 920. Clal does not cite any decision to the contrary. Instead, Clal misleadingly cites a series of cases where investors acquired stock in a company through a merger. *See* ECF No. 28 at 7-8. Although Clal does not acknowledge it, this line of cases is entirely distinct and addresses the situation where shareholders of one company use their shares to buy shares in a new, post-merger entity. As such, this line of cases is inapt. Clal did not buy shares in a company through a merger. Its existing investment in Verint divided on a pro-rata basis through a spinoff that required no action from Clal. ECF No. 29 at 5-7. This is ***the*** prototypical transaction that does not qualify as a purchase. *See, e.g.*, *Rathborne*, 683 F.2d at 920.

## II.    CORRECTING CLAL'S ERRORS SHOWS THAT IT HAD A GAIN, NOT A LOSS OF ANY KIND

Clal cannot claim a loss on the 4.36 million shares it received as a dividend because these shares are not part of the Class and were not "purchased" within the meaning of Section 10(b) of

---

[3]    Clal seeks to distinguish these cases on the ground that they involved a spin-off of a subsidiary rather than a "business unit." ECF No. 28 at 14. Clal's attempt at distinction is not relevant to the analysis, which looks at whether there was an investment decision.

the Exchange Act. *Micholle v. Ophthotech Corp.*, No. 17-CV-1758, 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018); *Hedick*, 2019 WL 4958238, *4-5, 8; *Boyd v. NovaStar Fin., Inc.,* No. 07-0139-CV, 2007 WL 2026130 (W.D. Mo. July 9, 2007).

When Clal's Class Period transactions are correctly assessed, it does not even have a loss. Applying a LIFO analysis that matches Class Period purchases to Class Period sales shows that Clal had a gain of approximately $1.9 million. ECF No. 31-1. Moreover, Clal also sold millions of Cognyte shares during the Class Period that it received at no cost in the spinoff. Including the proceeds from these sales, Clal made $65.8 million during the Class Period. ECF No. 31-2.

In the face of these facts and black-letter law, Clal effectively admits that its PSLRA motion papers massively overstated its losses and it falls back on two alternative loss calculations. In its opposition, Clal claims a $9.8 million loss, or *82% less* than its opening salvo, using the first-in-first-out ("FIFO") accounting methodology, as well as a $2.22 million loss (or *96.6% less* than its original loss estimate) using what it terms a "LIFO" methodology that considers Class Period purchases, but continues to ignore several of Clal's Class Period sales – sales that generated millions of dollars in proceeds. ECF No. 28 at 2, 10-13. The Court should reject Clal's transparent effort to change horses mid-race for several reasons.

### A.    Clal's Eleventh Hour Alternative Damages Analysis Is Untimely

The Court should reject Clal's new damages analyses because Clal advanced them for the first time in its opposition papers, rather than in its moving brief as required by the PSLRA. "The [PSLRA] statute is unequivocal and imposes precise time requirements" so lead plaintiff movants cannot "'manipulate the size of their financial loss'" and any "'supplementation [of loss calculations] after the expiration of the sixty (60) day [PSLRA motion deadline] period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify

the time limits expressly provided therein.'"  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 439-40 (S.D. Tex. 2002) (quoting *In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA imposes strict time requirements," and "[t]he plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window [to seek lead plaintiff appointment] has closed") (emphasis in original)); *see also, e.g.*, *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("the court will not consider the candidates' amendments of their amount of financial loss made after the filing deadline"); *In re Able Lab'ys. Sec. Litig.*, 425 F. Supp. 2d 562, 566 (D.N.J. 2006) ("the loss amount to consider for purposes of the [lead plaintiff] motion is the number from the original" motion papers); *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) ("a different rule would 'encourage parties seeking lead plaintiff status to manipulate the size of their financial loss'") (internal quotations omitted) (collecting cases).

Clal's opening briefs do not make any reference to the new damage calculations presented for the first time in its opposition. *See generally* ECF No. 25.  Rather, Clal asserted its financial interest in this litigation purely in terms of the number of shares it *purported to purchase* (5,250,259 shares), the amount of money it *purportedly expended* ($142,929,245), and the loss it *purportedly suffered* in connection with these "purchases," ($56,514,946).  ECF 25 at 8.  Clal's belated, self-serving arithmetic, is plainly improper and precisely why the PSLRA precludes "subsequent supplementation or modification" of a movant's claimed financial interest.  *Id.*, at *5; *see also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-CV-10360 (AJN), 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("courts are especially skeptical of a movant who initially presents one position in their opening brief and switch to another in their opposition. . . .").

**B.    Clal's New Damages Analyses Continue to Overstate Its Losses**

In addition to being untimely, both of Clal's latest damages analyses are unpersuasive because they continue to overstate Clal's losses.  Specifically, to manufacture the appearance of having the largest loss, both analyses require the Court to ignore numerous Class Period sales, in which Clal reaped tens of millions of dollars in profits.  Accordingly, neither of Clal's new damage analyses provide a basis for it to claim to have the largest recoverable loss of any movant.

With respect to Clal's new FIFO analysis, courts have "generally ***rejected*** FIFO as an appropriate means of calculating losses in securities fraud cases."  *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); *see also Bo Young Cha v. Kinross Gold Corp.*, No. 12 CIV. 1203, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 27 n.5 (E.D.N.Y. 2019) (noting FIFO "may exaggerate losses" (citation omitted)).

Furthermore, Clal's $9.8 million FIFO loss continues to ignore the substantial profit it earned from selling during the Class Period over 4.36 million shares it received from Verint as a dividend.  While Clal fails to "show its work," a review of its initial damages analysis confirms that Clal sold 4,367,015 spin-off shares during the Class Period and that these shares, which Clal paid nothing for, generated total proceeds of over $68 million.  After matching the remaining Class Period purchases against the remaining Class Period Sales, and accounting for Clal's $68 million in profits, in fact, Clal earned enormous profits.[4]

Similarly, the analysis Clal calls a "LIFO analysis" does not correctly reflect Clal's recoverable loss because it ignores the impact of several Class Period sales.  A straight LIFO that

---

[4]    Clal's treatment of its spin-off shares when calculating its FIFO loss is wholly inconsistent with its treatment of these same shares under its initial loss calculation.  Clal apparently treated the 4.36 million spin-off shares as part of a ***pre-Class Period balance***, using them to match its Class Period sales.  In its initial PSLRA motion, Clal claimed that these shares were "purchased within the Class Period."  *See* ECF No. 26-1.  Necessarily, both cannot be true.

matches Class Period purchases to sales results in a $1.9 million gain for Clal on its Class Period purchases of Cognyte stock. ECF No. 31-1. This is the most appropriate method to assess Clal's losses under the circumstances of this case, and reflects the undeniable truth that Clal did not lose money on its Class Period transactions in Cognyte.

Although Clal again fails to "show its work," it appears to have calculated a different LIFO loss by ignoring its sale of 256,613 shares between February 2, 2021, and February 18, 2021. *See* ECF No. 26-1 at 2. The apparent justification for diverging from a straight LIFO is that Clal began making open-market purchases in March 2021, so that the February 2021 sales were of spin-off shares. In so doing, Clal manufactures a loss by pairing its Class Period purchase to sales later in the Class Period when the stock price was lower.

But Clal's claimed loss ignores economic reality, including millions of dollars' worth of proceeds from the February 2021 sales, and does not describe its true recoverable loss. As Clal admits, the PSLRA does not prescribe any single calculation methodology; the Court must select a method that is appropriate under the circumstances. *See* ECF No. 28 at 12. Here, the method advocated by Clal "ignores sales occurring during the class period" and "exaggerate[s] losses." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (citing *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL 912359, at *4 (S.D.N.Y. Apr. 19, 2005)). Clal received $8,036,466 on the sales that it now seeks to overlook. ECF No. 26-1. Matching Clal's purchases against these sales is appropriate and reflects the fact that Clal netted enormous profits from its Class Period sales. Moreover, Clal's new LIFO calculation also fails to consider the millions of dollars in proceeds Clal netted from its sales at the end of the Class Period. ECF 32-1 at 2.

The bottom-line is that Clal netted $65.8 million from its Class Period transactions in Cognyte. It cannot be said to have lost money, notwithstanding Clal's attempts to claim otherwise,

through highly selective damages analyses.

### III.    CLAL IS INADEQUATE AND ATYPICAL

#### A.    Clal Is a Net Seller and a Net Gainer

During the Class Period, Clal was a net seller and a net gainer.  Clal sold 4.1 million more shares than it bought, and it had net profits of $65.8 million.  ECF No. 29 at 8-9.  These facts are disqualifying because unlike other members of the Class, Clal profited from elevated prices caused by the fraud.  *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (citations omitted); *see also Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020); *Batter v. Hecla Mining Co*., No. 19-CV-05719 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020).

Clal has no real response.  The case law it relies on actually supports Omaha P&F's appointment as Lead Plaintiff.  *See* ECF No. 32-1 at 9-10.  For example, *Foley v. Transocean Ltd.*, confirms the general rule against appointment of net sellers and net gainers but finds the rule inapt because the movant in question sold "all" of its shares after the partial disclosure of the fraud and, therefore, had not benefitted from the fraud.  272 F.R.D. 126, 132 (S.D.N.Y. 2011).  Here, there is no dispute that Clal sold hundreds of thousands of shares before any disclosure.  In *Richman v. Goldman Sachs Grp., Inc.*, the court confirmed that "***there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs***" but allowed a movant with a net loss to serve.  274 F.R.D. 473, 479 (S.D.N.Y. 2011).  Here, Clal is a net gainer, an example of a movant that, per *Richman,* should not be appointed lead.  *Id.*[5]

---

[5]    Similarly, while *Bajjuri v. Raytheon Techs. Corp.* found that a "net seller" ***can*** serve as a lead plaintiff if it shows that it has a "recoverable loss," here Clal has no recoverable loss; it is both a "net seller" ***and*** "net gainer," having profited handsomely from the alleged fraud.  Consequently, *Bajjuri* and the authority upon which it relies, are inapt.  *See, e.g.*, *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2 (N.D. Cal. 2009) ("***[W]here a 'net seller' is a 'net loser,'*** the net seller has incurred a cognizable loss and is the presumptive lead plaintiff where its net losses exceed

Clal's attempted factual distinctions also fail.  Clal cites to its newly advanced FIFO and LIFO analyses as basis to claim that it has a recoverable loss.  But as explained above, Clal ignores the proceeds it received from the millions of additional share sales it sold to arrive at its new loss figures.  Second, Clal posits that the underlying fraud may have been occurring for years before the Class Period and thus, that it purchased its Verint shares at inflated prices.  ECF No. 32-1 at 11-12.  That argument fails because the Court is confined to assessing a leadership motion using the "four corners of the complaint."  *Jochims*, 2021 WL 9599974, at \*2 ("I cannot appoint Hayden as co-lead plaintiff for the simple reason that within the four corners of the three original complaints, no such class exists.").  The operative complaint has a Class Period beginning on February 2, 2021, not one that begins earlier.  ECF No. 1, ¶1.  Moreover, Clal's argument is utterly lacking in particularity or evidence.  It makes no attempt to pinpoint at what earlier point Verint's stock was inflated.  It also provides no evidence regarding its purchases of Verint stock to demonstrate that they occurred during some hypothetical period of inflation.

### B.    Clal's Materially Misleading Papers Are Disqualifying

Clal is also inadequate because its motion papers are materially misleading, in that they represent that Clal expended $142 million during the Class Period and suffered a loss of $56 million, when Clal had no basis for making these representations.  *See, e.g.*, *Rodriguez v. DraftKings, Inc.*, No. 21 CIV. 5739, 2021 WL 5282006, at \*6, \*9 (S.D.N.Y. Nov. 12, 2021).  Clal offers no argument in response.

### CONCLUSION

Accordingly, the Court should grant Omaha P&F's motion in full and deny Clal's motion.

---

those of the other movants."); *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at \*3 (N.D. Cal. April 16, 2007).  ("***In cases involving net sellers who are also net losers*** . . . courts have held that a movant should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff.") (internal citations omitted).

10

DATED:  May 24, 2023                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Donald A. Broggi
Rhiana L. Swartz
Jonathan Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

*Counsel for Lead Plaintiff Movant City of Omaha Police and Firefighters Retirement System and Proposed Lead Counsel for the Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
