# EXHIBIT 4

# COUNCIL ON ETHICS
### THE GOVERNMENT PENSION FUND GLOBAL

Cognyte Software Ltd
Elad Sharon
33 Maskit
Herzliya 4673333
Israel

| Your ref.: | Our ref.: | Date: |
|---|---|---|
|  | 21/619-3 / IETH | 01.07.2021 |

**Request for information by the Council on Ethics for the Norwegian Government Pension Fund Global**

Dear Mr Elad Sharon,

The Norwegian Government Pension Fund Global is a sovereign wealth fund, with assets under management of approximately USD 1.3 trillion. Norges Bank manages the Fund on behalf of the Norwegian Ministry of Finance and is the owner of the securities. As of 2 February 2021, the Fund held 1.3% of Cognyte Software Ltd's shares.

To ensure the Fund is invested responsibly, the Norwegian Government has appointed an independent body, the Council on Ethics, to advise Norges Bank. If a company's business practices are deemed by the Council on Ethics to be incompatible with the Fund's ethical guidelines, the Council may recommend that the company concerned be excluded from investment by the Fund or placed under observation for a specified number of years. The final decision is made by Norges Bank. A copy of the Guidelines for Observation and Exclusion of Companies from the Norwegian Government Pension Fund Global is enclosed for your perusal.

The Council is currently looking into companies' potential contribution to human rights abuse enabled by surveillance technology and Cognyte Software Ltd (Cognyte) is among the companies being scrutinised in this respect.

From public sources, the Council has learned about allegations against Verint Systems Inc (Verint) *i.a.* in Azerbaijan, Bahrain, Indonesia and South Sudan, where the company or its subsidiaries are said to have sold surveillance products and services used to implement repressive government policies targeting *i.a.* minorities, political activists and journalists.[1]

---

[1] *Revealed: Israel's Cyber-spy Industry Helps World Dictators Hunt Dissidents and Gays,* Hagar Shezaf and Jonathan Jacobson, 20 October 2018 and *These Walls Have Ears: The Chilling Effect of Surveillance in South Sudan*, Amnesty International, February 2021.

According to information published by Cognyte and Verint, including filings to the US Security and Exchange Commission, the Council understands that Verint in February 2021 transferred all of its intelligence and cyber activities to Cognyte as a standalone public company, including customers, business operations, contracts and staff. It is the Council's understanding that Cognyte will continue to provide products and services similar to those referred to in the mentioned allegations.

On this background, we would appreciate if you could take the time to review and answer the following questions as well as provide the Council with any other documentation you consider relevant.

1.  Can you please explain whether any steps have been taken to address involvement in human rights abuse through your operations, and if any guidelines or procedures have been developed to avoid involvement in such abuse? The Council would also appreciate any information you are able to share about steps taken in response to the mentioned allegations in Azerbaijan, Bahrain, Indonesia and South Sudan.

2.  According to Cognyte's "Third Party Code of Conduct", Cognyte is committed to respect for the rights of all individuals, including protection of human rights. The Code of Conduct for Cognyte's own operations on the other hand does not include any mention of this commitment. Can you please explain how your human rights commitment is implemented in your own operations, for example through human rights due diligence for new business partners or projects?

3.  In a filing to the Security and Exchange Commission in January 2021, under the heading "Market and Strategy Risks" it follows that Cognyte "may experience negative publicity, reputational harm, or other adverse impacts on our business as a result of offering certain types of solutions or if we sell our solutions to countries or customers that are considered disfavored by the media or by certain political or privacy organizations, even where such activities or transactions are permissible under applicable laws." Can you please explain which, if any, steps have been taken by Cognyte to reduce this risk, and if  you consider that sale of certain solutions to government entities in countries with poor human rights track records may be a cause of concern even if the operations are legal in the relevant country?

The Council would appreciate your response to these questions by 1 August 2020. Kindly send your response by email to Ms Ingrid Thorsnes at ingrid.thorsnes@etikkradet.no.

If you have any questions or comments you may also contact Ms Thorsnes.

Should the Council subsequently consider recommending that Cognyte be placed under observation or excluded from investment by the Fund, a draft of the Council's recommendation will be sent you for comments.

In conclusion, please note that we do not wish to receive information you consider to be price sensitive.


Yours sincerely,

Ingrid Thorsnes
Senior Advisor

Attachments:

-*Guidelines for observation and exclusion of Companies from the Norwegian Government Pension Fund Global*