UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CITY OF OMAHA POLICE AND : 
FIREFIGHTERS RETIREMENT SYSTEM, : 
Individually and on Behalf of All Others : 
Similarly Situated, : 
                                   :   23-cv-01769 (LGS)
               Plaintiff, : 
                                 : 
        v. : 
                                   : 
COGNYTE SOFTWARE LTD, ELAD : 
SHARON and DAVID ABADI, : 
                                   : 
              Defendants. : 

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT <u>FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Ian C. Lerman
Samuel G. Bieler
One Manhattan West
New York, NY 10001-8603
Phone: (212) 735-3000
Fax:   (212) 735-2000
scott.musoff@skadden.com
ian.lerman@skadden.com
samuel.bieler@skadden.com

*Counsel for Defendants Cognyte Software
Ltd., Elad Sharon and David Abadi*

Dated:  February 2, 2024

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.    Plaintiff Fails to Allege a Misrepresentation or Omission ............................................. 2

      A.    Plaintiff Fails to Plead Misstatements Related to Cognyte's Products or
            Customers ............................................................................................................ 2

      B.    Plaintiff Fails to Identify Actionable Misstatements in Cognyte's Code of
            Conduct ................................................................................................................ 4

II.   Plaintiff Fails to Allege a Strong Inference of Scienter ................................................. 6

III.  Plaintiff Fails to Allege Loss Causation ........................................................................ 7

      A.    The Purported Corrective Disclosures Reflected the Materialization of
            Known Risks ......................................................................................................... 7

      B.    Declines in Cognyte's Stock Price Were Unrelated to the Purported
            Corrective Disclosures ......................................................................................... 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Africa v. Jianpu Technology Inc.*,
    No. 21-cv-1419 (JMF), 2022 WL 4537973 (S.D.N.Y. Sept. 28, 2022) ............................3

*In re Bayou Hedge Fund Litigation*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd sub nom. South Cherry Street, LLC v.*
    *Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ..........................................................6

*In re BHP Billiton Ltd. Securities Litigation*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017) ...................................................................................6

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ..........................................................................................2

*Bondali v. YUM! Brands, Inc.*,
    620 F. App'x 483 (6th Cir. 2015) .......................................................................................4

*Born v. Quad/Graphics, Inc.*,
    521 F. Supp. 3d 469 (S.D.N.Y. 2021) .................................................................................7

*City of Brockton Retirement System v. Avon Products, Inc.*,
    No. 11 Civ. 4665 PGG, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ........................4, 5

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..............................................................................8

*City of Westland Police & Fire Retirement System v. MetLife, Inc.*,
    129 F. Supp. 3d 48 (S.D.N.Y. 2015) ...............................................................................9, 10

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
    No. 17 Civ. 0917 (LGS), 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ...........................9

*In re Delcath Systems, Inc. Securities Litigation*,
    36 F. Supp. 3d 320 (S.D.N.Y. 2014) ..................................................................................9

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ..........................................................................................................10

*In re Goldman Sachs Group, Inc. Securities Litigation*,
    No. 10 Civ. 3461 (PAC), 2014 WL 2815571 (S.D.N.Y. June 23, 2014) ...........................5

*Gregory v. ProNAi Therapeutics Inc.*,
    757 F. App'x 35 (2d Cir. 2018) ........................................................................................10

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019) ...................................................................................7

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)....................................................................................................6

*Karimi v. Deutsche Bank Aktiengesellschaft*,
607 F. Supp. 3d 381 (S.D.N.Y. 2022) ..................................................................................5

*Klamberg v. Roth*,
473 F. Supp. 544 (S.D.N.Y. 1979) ........................................................................................1

*Landmark Ventures, Inc. v. Wave Systems Corp.*,
513 F. App'x 109 (2d Cir. 2013).........................................................................................10

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007)................................................................................................10

*Lonstein Law Office, P.C. v. Evanston Insurance Co.*,
No. 20-cv-9712 (LJL), 2022 WL 311391 (S.D.N.Y. Feb. 2, 2022)...................................2

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
518 F. Supp. 3d 772 (S.D.N.Y. 2021) ..................................................................................7

*In re Merrill Lynch Auction Rate Securities Litigation*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010), *aff'd sub nom. Wilson v. Merrill Lynch &
Co.*, 671 F.3d 120 (2d Cir. 2011) ........................................................................................8

*Meta Platforms, Inc., v. Bright Data LTD.*,
No. 23-cv-00077-EMC, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024)…………...............3

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)...................................................................................................5

*In re MGT Capital Investments, Inc. Securities Litigation*,
16 Civ. 7415 (NRB), 2018 WL 1224945 (S.D.N.Y. Feb. 27, 2018)..................................2

*In re Petrobras Securities Litigation*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) ..................................................................................6

*In re Qiwi plc Securities Litig.*,
No. 20-cv-6054 (RPK) (CLP), 2023 WL 7283619 (E.D.N.Y. Nov. 3, 2023)....................4

*Salveson v. JP Morgan Chase & Co.*,
663 F. App'x 71 (2d Cir. 2016)...........................................................................................10

*Shash v. Biogen, Inc.*,
84 F.4th 1 (1st Cir. 2023)...............................................................................................8, 10

*In re Signet Jewelers Ltd. Securities Litigation*,
    No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)...........................5

*Sinay v. CNOOC Ltd.*,
    554 F. App'x 40 (2d Cir. 2014)..................................................................................7

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)............................................................................... 1, 4, 5

*Swanson v. Interface, Inc.*,
    No. 20-cv-5518 (BMC), 2022 WL 2003990 (E.D.N.Y. June 6, 2022)..........................8, 9

*In re Telefonaktiebolaget LM Ericsson Securities Litigation*,
    No. 22-cv-1167 (WFK) (LB), 2023 WL 3628244 (E.D.N.Y. May 24, 2023)....................4

*In re UBS AG Securities Litigation*,
    No. 07-cv-11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub
    nom. City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014).......................................................................................3

*In re Vale S.A. Securities Litigation*,
    No. 19-cv-526 (RJD)(SJB), 2020 WL 2610979 (E.D.N.Y. May 20, 2020)...................5, 6

*In re VEON Ltd. Securities Litigation*,
    No. 15-cv-08672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) .........................5

*In re Virtus Investment Partners, Inc. Securities Litigation*,
    195 F. Supp. 3d 528 (S.D.N.Y. 2016) .........................................................................3

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)................................................................................4, 9

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) .........................................................................8

Defendants Cognyte Software Ltd. and Elad Sharon respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Amended Complaint for Violations of the Federal Securities Laws (ECF No. 52) in its entirety with prejudice.

## PRELIMINARY STATEMENT[1]

Plaintiff's Opposition doubles down on its unfounded, conclusory assertion that Cognyte violated export control laws based on an investor letter which reflects only publicly available information and actually says no such thing. Plaintiff's reliance on vague assertions in the Meta Report about Cognyte's business and customers fares no better. At its core, Plaintiff points to "banal and vague corporate statements," *Singh v. Cigna Corp.*, 918 F.3d 57, 60 (2d Cir. 2019), mischaracterizes those statements as somehow promising that Cognyte's products can only be used defensively and then alleges that secondhand, uncorroborated allegations about Cognyte's customers and products establish the falsity of Defendants' statements. But "so long as material facts are disclosed or already known, it is not deceptive to fail to 'characterize' those facts with 'pejorative nouns and adjectives,' or to fail to verbalize all adverse inferences expressly." *Klamberg v. Roth*, 473 F. Supp. 544, 551 (S.D.N.Y. 1979).

Plaintiff's attempt to resurrect its scienter allegations also fails. There is nothing in the investor letter, which again is based on public information, that would alert Cognyte or its CEO of any export violations as Plaintiff contends because the letter never mentioned any such violations, nor could it as none exist.

On loss causation, Plaintiff cannot dispute that Cognyte warned of the precise risks that ultimately materialized. Plaintiff also fails to address that Cognyte's stock *increased* after several

---

[1] Lettered exhibits are attached to the Declaration of Scott D. Musoff, dated December 6, 2023. (ECF No. 56.) Numbered exhibits are attached to the Declaration of Deborah Clark-Weintraub, dated January 16, 2024. (ECF No. 61.) Capitalized terms not defined herein are defined in Defendants' Memorandum of Law (the "MTD"). (ECF No. 55.) All citations and internal quotation marks are omitted and all emphasis is added unless otherwise indicated.

purported corrective disclosures and that declines were based on unrelated business factors.

For these reasons, as well as those discussed below and in Defendants' Motion to Dismiss, the Complaint should be dismissed in its entirety, with prejudice.

**ARGUMENT**[2]

## I.   PLAINTIFF FAILS TO ALLEGE A MISREPRESENTATION OR OMISSION

### A.   Plaintiff Fails to Plead Misstatements Related to Cognyte's Products or Customers

Plaintiff's Opposition confirms that the Complaint fails to plead with particularity any specific misstatements about Cognyte's products or customers or "'demonstrate with specificity why and how' each statement is materially false or misleading." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).[3]   While Plaintiff recklessly asserts multiple times throughout the Opposition that Cognyte violated unspecified export laws, the Complaint does not (and cannot) actually point to any admissions of wrongdoing or government charges levied against any Defendant.

The Meta Report also offers no basis to find that Cognyte's Code of Conduct or any other statement was misleading.   It consists of vague and generalized allegations that provide no specificity about what Cognyte or its customers did.   Rather, Plaintiff cherry-picks general statements from the Meta Report that do not refer to Cognyte but to the nature of the "global surveillance-for-hire industry" ***in general***.   (Ex. E, Meta Report at 2.)   Compounding this

---

[2] Plaintiff does not dispute, and thus concedes, that any claims asserted against Abadi should be dismissed.  *See Lonstein L. Off., P.C. v. Evanston Ins. Co.*, No. 20-cv-9712 (LJL), 2022 WL 311391, at *12 n.7 (S.D.N.Y. Feb. 2, 2022) ("Defendants also move to dismiss Markel as a defendant. . . .  Plaintiffs do not defend their claims against Markel and therefore are deemed to have abandoned those claims.").

[3] In response to Defendant's demonstration that Cognyte never actually characterized its products as "defensive" (MTD at 12-15), Plaintiff generically asserts that "***all*** of Defendants' statements touted Cognyte's products' ability to protect against all manner of cyber threats by bad actors." (Opp. at 12 (emphasis in original).)  But Plaintiff does not (and cannot) allege that Cognyte's products lack this "ability to protect" (*id.*), and Cognyte was not required to "draw negative inferences or characterize their behavior in a pejorative way." *In re MGT Cap. Invs., Inc.*, 16 Civ. 7415 (NRB), 2018 WL 1224945, at *11 (S.D.N.Y. Feb. 27, 2018) (collecting cases).

2

deficiency, Meta concedes that it could not "discern the purpose or legitimacy of . . . [the] targeting" it discussed.  (Ex. E, Meta Report at 12.)  Yet, Plaintiff relies on this report to assert that Cognyte engaged in a 23-month long intentional fraud.  This leap of assertions should readily be rejected.[4]

Plaintiff relies heavily on *In re Virtus Investment Partners, Inc. Securities Litigation*, 195 F. Supp. 3d 528, 536 (S.D.N.Y. 2016) and similar cases to argue that Cognyte had a duty to disclose illegal conduct because Cognyte put its success at issue, and because it denied that illegal conduct was occurring.  (Opp. at 10-12.)  But these cases are readily distinguishable as they involved admissions of violations of the law or charged violations by the government.  "[A] corporation has no affirmative duty to . . . disclose ***uncharged, unadjudicated*** wrongdoings or mismanagement."  *In re UBS AG Sec. Litig.*, No. 07-cv-11225 (RJS), 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).  Plaintiff cannot demonstrate any exception in this case.

First, Plaintiff identifies no statements that "put [Cognyte's] success . . . at issue." *Afr. v. Jianpu Tech. Inc.*, No. 21-cv-1419 (JMF), 2022 WL 4537973, at *8 (S.D.N.Y. Sept. 28, 2022).  It identifies no statements in which Cognyte attributed its success to a refusal to sell to "bad actors," entities engaged in human rights abuses or other disfavored entities.  (*Cf.* Compl. ¶ 52 (discussing disclosed risks of sales "to countries or customers that are considered disfavored").)

Second, as discussed above, Plaintiff fails to plead any illegal conduct or wrongdoing.

Third, Plaintiff fails to show that any violations were a "material source" of success

---

[4]  Even Meta's claimed terms of service violations may be wrong and at the very least could be the subject of protracted litigation.  *See Meta Platforms, Inc., v. Bright Data LTD.*, No. 23-cv-00077-EMC, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) (granting data aggregator's motion for summary judgment dismissing claims that it violated Meta's terms of service by "scraping" information from Facebook and Instagram profiles).  These self-serving, unadjudicated allegations of such violations cannot form the basis for claims of intentional securities fraud.

because it fails to allege "to what extent illegal transactions contributed to revenue or growth." *In re Qiwi plc Sec. Litig.*, No. 20-cv-6054 (RPK)(CLP), 2023 WL 7283619, at *14 (E.D.N.Y. Nov. 3, 2023).

Plaintiff's argument that Cognyte's risk warnings identify hypothetical risks that had already materialized falls flat. (Opp. at 13-14.) *See In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, No. 22-cv-1167 (WFK) (LB), 2023 WL 3628244, at *12 (E.D.N.Y. May 24, 2023) (statements were not misleading where company "continuously warned investors [it] *might* fail to comply with regulations and *could be* the target of future investigations" after company admitted some violations had *already* occurred); *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1195-96 (9th Cir. 2021) (not misleading to warn that Tesla "*may* experience delays" when it already had); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) (risk disclosures "are not meant to educate investors on what harms are *currently* affecting the company").

## B.      <u>Plaintiff Fails to Identify Actionable Misstatements in Cognyte's Code of Conduct</u>

Plaintiff concedes that "general statements in Codes of Conduct about the importance of complying with ethical norms are immaterial puffery that investors would not reply [sic] upon." (Opp. at 15 (citing *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019)).)  While Plaintiff argues that statements in codes of conduct may be actionable when described with sufficient detail, it does not allege with particularity what violations of Cognyte's Code of Conduct actually occurred and when.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *16 (S.D.N.Y. Sept. 29, 2014) (Opp. at 15) (inactionable "generalized expressions of commitment to high corporate standards"); *see also Singh*, 918 F.3d at 63 ("descriptions of compliance efforts" must be "far more detailed").

*Brockton* is particularly instructive.  There, as here, the code of ethics stated that the company's employees must observe high ethical standards, avoid violating laws and refer any

4

issues to the legal department.  *Compare Brockton*, 2014 WL 4832321, at *13-14 (dismissing claims), *with* Ex. 2, Cognyte Code of Conduct at 45.  The court explained that such statements were "not material" because they "merely set forth standards in generalized terms that [defendant] hoped its employees would adhere to."  *Brockton*, 2014 WL 4832321, at *16.[5]

Plaintiff alternatively suggests the Code of Conduct's "professed commitment to the law" somehow "provided investors with comfort that 'reasonably effective steps' were being taken to comply with the law."  (Opp. at 16-17.)  But Cognyte's Code of Conduct is aspirational, and Cognyte warned that its efforts might fail.  (*See* Ex. A, Dec. 22, 2020 Form 20-F at 35 ("[Cognyte] ***cannot assure you*** that these policies, procedures, or systems will be adequate or that [it] or [its] personnel will not violate these policies.").)  As Plaintiff's case acknowledges, "to the extent these statements contain purely aspirational language, such language is inactionable."  *Vale*, 2020 WL 2610979, at *12 (Opp. at 17).  Such "general declarations about the importance of acting lawfully and with integrity" is "a textbook example of 'puffery.'"  *Singh*, 918 F.3d at 63.[6]

Plaintiff counters that even if statements in Cognyte's Code of Conduct constitute puffery in isolation, Cognyte's repeated emphasis on its commitment to complying with export laws make such statements material.  (Opp. at 17.)  But Plaintiff fails to show the necessary repetition, identifying only one instance where Cognyte referenced its Code of Conduct in a statement to

---

[5] Plaintiff's cases (Opp. at 15) are distinguishable because the statements at issue were significantly more detailed. *See Meyer v. Jinkosolar Holdings Co*., 761 F.3d 245 (2d Cir. 2014) (describing compliance systems including specific equipment and 24-hour monitoring);  *In re Vale S.A. Sec. Litig.*, No. 19-cv-526 (RJD) (SJB), 2020 WL 2610979, at *11 (E.D.N.Y. May 20, 2020) ("lengthy statement" including "specific representations about [Vale's] then-existing practices"); *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 393 (S.D.N.Y. 2022) (detailed "descriptions of the processes by which DB claims to . . . comply with its legal AML & KYC obligations").

[6] Plaintiff's contrary cases (Opp. at 17) deal with specific statements about compliance programs that are contradicted by objective facts. *In re VEON Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2017 WL 4162342 at *9 (S.D.N.Y. Sept. 19, 2017) (statements about internal controls contradicted by admissions in a deferred prosecution agreement); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM), 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018) (statements about employment decisions contradicted by allegations that decisions were made based on employees' willingness to submit to sexual demands); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461 (PAC), 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) (statements about specific controls to prevent conflicts of interest were contradicted by detailed allegations of "clear and egregious conflicts of interest").

investors.  (Opp. at 18 (citing Compl. ¶ 92).)  Plaintiff identifies no cases in which such limited repetition made otherwise inactionable statements material.  *Cf. In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 80 (S.D.N.Y. 2017) (Opp. at 17) ("25 such misstatements during the Class Period"); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (Opp. at 17) ("statements were made repeatedly" between 2010 and 2015); *Vale*, 2020 WL 2610979, at \*12 n.15 (Opp. at 17) (more than 11 statements during class period).

## II.   PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiff argues that "the ***most potent evidence***" of Defendants' scienter is the July 1, 2021 letter from the so-called Council on Ethics (the "Ethics Letter") (Opp. at 19-20), which is merely an advisor to the Norwegian government's sovereign wealth fund.  (Ex. 4, Ethics Letter at 1.)[7]

The Ethics Letter does not support an inference of scienter because it does not establish "Sharon's awareness" of any export law violations (Opp. at 20) and does not contain any "information contradicting [Defendants'] public statements."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  It did not mention export violations at all.  Rather, it sought information from Cognyte about accusations, "***based on information provided in Cognyte's and Verint's SEC filings***" (Opp. at 19) and in publicly available news articles, regarding the Company's due diligence processes and sales to countries accused of human rights abuses "***even if the operations are legal***."  (Ex. 4, Ethics Letter at 2.)  Therefore, the Ethics Letter cannot establish "Sharon's awareness of . . . ***violation[s] of export control laws***."  (Opp. at 20.)  That one investor decided to divest from Cognyte based on information disclosed in public filings provides no evidence of "a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts," as is required to plead scienter.  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y.

---

[7]  Contrary to Plaintiff's contention (Opp. at 19 n.11), Defendants addressed Plaintiff's scienter allegations in the Motion to Dismiss.  (MTD at 20-22.)

2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009) (emphasis in original).  Indeed it shows the opposite.  Any investor uncomfortable with Cognyte's business could choose not to invest.[8]

Plaintiff's fallback core operations argument, based on Sharon's tenure at Verint and familiarity with Cognyte's products and sales, is also insufficient.[9]  *See Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 493 (S.D.N.Y. 2021) ("[A]llegations of circumstantial evidence—such as the individual Defendants' senior positions, control over [the company], regulatory certifications, and the relative importance of [the company's transformation strategy]—are not sufficient to plead scienter, even considered in their totality."); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 852 (S.D.N.Y. 2019) (Opp. at 21) ("While the Court agrees . . . these were areas that were significant to [defendant's] operations, on its own, this is insufficient to allege a strong inference of scienter.").[10]

## III.   PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION

### A.   The Purported Corrective Disclosures Reflected the Materialization of Known Risks

Plaintiff argues that it has pleaded loss causation despite Cognyte's prior warnings of the precise risks that ultimately materialized because "the warned-of risk had already come to pass"

---

[8] The Norwegian sovereign wealth fund has divested from numerous other public companies including companies such as Airbus and Phillip Morris.  *See* Norges Bank Investment Management, Observation and Exclusion of Companies, https://www.nbim.no/en/responsible-investment/ethical-exclusions/exclusion-of-companies/ (updated Dec. 18, 2023).  Choosing to divest from companies based on so-called political and environmental factors does not support a claim for intentional securities fraud.

[9] Plaintiff posits that "*Sinay* recognized that there are instances where plaintiffs may plead scienter by showing that a defendant's conduct was 'so obvious that the defendant *must have been aware of it*.'"  (Opp. at 21 n.14 (quoting *Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014) (emphasis in original)).)  But Plaintiff's allegations do not come close to showing that Defendants' "conduct was '*highly unreasonable* and represent[ed] an *extreme departure* from the standards of ordinary care.'"  *Sinay*, 554 F. App'x at 42 (alteration in original) ("The District Court correctly concluded that [plaintiff] *had not* sufficiently pleaded scienter based on what [defendant] 'must have known.'" (emphasis in original)).

[10] Plaintiff therefore fails to allege scienter for any individual "whose intent could be imputed to [Cognyte]." *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 782 (S.D.N.Y. 2021).

and because Defendants' materialization of the risk theory "is a truth-on-the-market defense routinely rejected by courts at the pleading stage." (Opp. at 22-23.)  Both arguments fail.

Even if Cognyte violated export laws, sold its products to disfavored countries and violated Meta's terms of service, Plaintiff does not (and cannot) allege that any of this occurred before Cognyte's warnings of negative publicity, reputational harm or other adverse impacts at the time Defendants made their statements.  (*Supra* § I; MTD at 15-18, 18 n.10.)  That some of these risks allegedly came to pass cannot satisfy loss causation.

Moreover, Defendants have not asserted a truth-on-the-market defense.  The Court should reject Plaintiff's effort to defeat Defendants' loss causation argument by mischaracterizing it. (Opp. at 23.)  *See Zhong Zheng v. Pingtan Marine Enter. Ltd*., 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019) (rejecting plaintiff's contention that "Defendant's loss causation argument actually is a 'truth on the market' affirmative defense").[11]

**B.      Declines in Cognyte's Stock Price Were  
Unrelated to the Purported Corrective Disclosures**

Plaintiff next argues that "there is no requirement that 'a stock's price must drop immediately following a corrective disclosure for loss causation to be sufficiently pled.'"  (Opp. at 23 (quoting *Shash v. Biogen, Inc*., 84 F.4th 1, 20 (1st Cir. 2023)).)  Plaintiff's cases are inapposite because in its cases stock prices ***declined***, even if not immediately.  *See Shash*, 84 F.4th at 20 (Opp. at 23) (stock price "began to drop" the day after the corrective disclosure and "collapsed" the next trading day); *Swanson v. Interface, Inc.*, No. 20-cv-5518 (BMC), 2022 WL 2003990, at *3

---

[11] The doctrine is irrelevant because it applies to materiality (not loss causation) and is based on information available to the market from ***other sources*** (not from Defendants' risk disclosures).  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) ("Under the 'truth on the market' doctrine . . . a misrepresentation ***is immaterial*** if the information is ***already known to the market*** . . . ."), *aff'd sub nom. Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012) ("Defendants argue that ***they*** disclosed all required information, ***not*** that they . . . should be excused because ***other sources*** have already made the same information available.").

(E.D.N.Y. June 6, 2022) (Opp. at 23) ("stock price fell 3.3% one day after the SEC released its findings"); *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 336 (S.D.N.Y. 2014) (Schofield, J.) (Opp. at 24) (same-day and next-day declines).  In contrast, Cognyte's stock ***rebounded*** within three days, refuting the inference that the alleged corrective disclosures caused the decline in Cognyte's stock price in the first instance.  (MTD at 24; *see also* Ex. H, Cognyte Stock Chart.) *See Wochos*, 985 F.3d at 1198 ("The quick and sustained price recovery . . . refutes the inference that the alleged concealment of this particular fact caused any material drop in the stock price."). Plaintiff also ignores that Cognyte's stock ***rose*** in response to the January 15, 2023 purported corrective disclosures.  (MTD at 24.)

Plaintiff finally asserts that "a complaint can sufficiently plead loss causation without alleging facts that disaggregate losses or that rule out other causes."  (Opp. at 24 (quoting *Cohen v. Kitov Pharms. Holdings, Ltd.*, No. 17 Civ. 0917 (LGS), 2018 WL 1406619, at \*6 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.)).)  Plaintiff oversimplifies.  *Cohen* involved a single set of corrective disclosures with price declines immediately accompanying the disclosures and no other events impacting stock price.  Under these unambiguous circumstances, loss causation can properly be plead without allegations concerning disaggregation.  *Cohen,* 2018 WL 1406619, at \*7.

But where unrelated events impacting stock price are evident from the face of the complaint and documents incorporated by reference, it is axiomatic that "***[t]o survive a motion to dismiss*** under the Exchange Act . . . a plaintiff ***must 'disaggregate*** those losses caused by the [unrelated events] from disclosures of the truth behind the alleged misstatements.'"  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 85 (S.D.N.Y. 2015) (second alteration in original) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009)). "[A] plaintiff's claim fails when it has not adequately ***ple[]d facts*** which, if proven, would show

9

that its loss was caused by the alleged misstatements *as opposed to intervening events*.'" *Id.* at 84-85 (first alteration in original) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005)); *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007) (similar).[12]  Thus, in *City of Westland Police* the court found loss causation allegations insufficient where they failed to account for "the 'market upheaval' caused by S & P's decision to downgrade the United States' credit rating—not to mention [defendant's] mostly stable stock performance during the relevant period."  129 F. Supp. 3d at 86.  Similarly, Plaintiff's allegations fail to account for the supply chain upheaval caused by the COVID pandemic or the fact that Cognyte's stock recovered or even increased after several purported corrective disclosures.  (MTD at 24-25.)

As the Supreme Court has explained, "lower price may reflect, not the earlier misrepresentation, but *changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price*."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).  (*See also* MTD at 24-25 (discussing unrelated business challenges).)  Plaintiff's failure to disaggregate losses or account for any of the business challenges Defendants identified (MTD at 23-24) renders Plaintiff's loss causation allegations deficient.

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety with prejudice.[13]

---

[12] Plaintiff's own authority recognizes that at the pleading stage a plaintiff must "*eliminat[e] other possible explanations* for th[e] price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to *other possible depressive factors*—that caused at least a 'substantial' amount of the price drop."  *Shash*, 84 F.4th at 20 (Opp. at 23).

[13] Plaintiff's request to amend is improper, as it was not brought by notice of motion and does not provide a copy of the proposed amended complaint.  *See Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71, 76 (2d Cir. 2016).  Plaintiff also does not explain how its amendment would cure the deficiencies Defendants identified—nor can it since any amendment would be futile.  *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) ("[Plaintiffs] do not explain how these amendments would cure the shortcomings that resulted in dismissal or why they did not include these proposed amendments previously."); *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 513 F. App'x 109, 112 (2d Cir. 2013).  Accordingly, Plaintiff's request to amend should be denied.

Dated:  New York, New York
        February 2, 2024

Respectfully submitted,

 /s/ Scott D. Musoff
Scott D. Musoff
Ian C. Lerman
Samuel G. Bieler
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax:    (212) 735-2000
scott.musoff@skadden.com
ian.lerman@skadden.com
samuel.bieler@skadden.com

*Counsel for Defendants Cognyte Software
Ltd., Elad Sharon and David Abadi*