SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NEW YORK 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-7852
DIRECT Fax
(917) 777-7852
EMAIL ADDRESS
SCOTT.MUSOFF@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

October 28, 2024

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square, Room 1106
New York, NY 10007

Re:     *City of Omaha Police and Firefighters Retirement System v.
Cognyte Software Ltd., et al.*, No. 23-cv-01769 (LGS)

Dear Judge Schofield,

On behalf of Defendants Cognyte Software Ltd., Elad Sharon, and David Abadi (collectively, "Defendants") in the above-referenced action, we respectfully write in opposition to Plaintiff City of Omaha Police and Firefighters Retirement System's ("Plaintiff") letter motion ("Ltr.," ECF 68) for leave to file a proposed second amended complaint ("SAC," ECF 68-1). Plaintiff's proposed SAC fails to address the numerous pleading deficiencies identified by the Court in its decision and order dismissing the complaint ("Op.," ECF 64) and therefore amendment would be futile. *See Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 436 (S.D.N.Y. 2023) (Schofield, J.) ("Despite being on notice . . . the FAC did not correct the deficiencies. . . .").[1]

*Misrepresentation.* The SAC does not meaningfully change the purported misstatements the Court already dismissed. (Op. 7.) Plaintiff attempts to save its claim by adding lengthy quotations of export laws but does not (and cannot) identify any government investigations or findings, internal documents, confidential witnesses, or *any facts whatsoever* to support its conclusory theory that "Cognyte indiscriminately sold" its products in violation of applicable law. (*E.g.*, SAC ¶56.) Rather, the SAC continues to rely on conclusory articles discussing just two purported transactions. *See In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *8 (S.D.N.Y. Mar. 30, 2018) ("[C]onclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel." (citation omitted)). (SAC ¶¶45-46, 103-05.) Moreover, the articles actually demonstrate the futility of the proposed amendments.

Plaintiff quotes an April 9, 2024 Haaretz article as "evidence" that Cognyte "followed through with the [Myanmar] sale after the military coup" (Ltr. 3), but the article says no such

---

[1] Like the amended complaint, the SAC "contains no allegations against Defendant David Abadi," thus to the extent any claims are asserted against Abadi, leave to amend should be denied. (Op. 7.) *Accord Pena v. DePrisco*, 432 F.3d 98, 105 nn.5-6 (2d Cir. 2005).

Hon. Lorna G. Schofield
October 28, 2024
Page 2

thing.[2] To the contrary, it states that the Israeli government determined that "the evidentiary basis is insufficient to open an investigation" and discusses only marketing, not sales. (Ex. 1 at 1; *see also id.* at 2-3 ("[I]t is very difficult to verify whether the marketing of a particular system – especially an unclassified product – requires a license, partly because the state does not disclose to the public critical information.").)

Plaintiff's new allegations regarding a purported Bangladesh sale are similarly infirm. The January 10, 2023 article cited in the SAC does not state that any laws were violated; it notes that the Israeli government declined to confirm "whether it approved the spyware sales to Bangladesh." (Ex. 2 at 2.) As the article reflects, "Israeli companies are formally banned from doing business with Bangladesh, *but the exceptions seem to prove there is no longer much substance behind that rule.*" (*Id.* (emphasis added).)[3] In any event, Plaintiff fails to plead that sales by Cognyte's *Cypriot subsidiary* violated any laws, as there are no allegations that sales to Bangladesh are illegal under Cypriot or EU law or that any products allegedly sold were subject to Israeli law. (*Cf.* SAC ¶46.)[4] Thus, the SAC "does not allege with sufficient particularity that Defendants violated the law." (Op. 15 (no allegation that "authorities had charged Cognyte with any violation").)[5]

The SAC's "bad actor" allegations also continue to fail because liability would turn on nothing more than "the eye of the beholder." (Op. 11.) Plaintiff attempts to salvage this theory by arguing that Cognyte "*was required* to know" how its products were being used. (Ltr. 2.) But Israeli law requires only that a company declare the "*intended* use of the equipment." (SAC ¶32 (emphasis added).) There is no continuing obligation (nor could there practically be) to confirm whether customers use products as intended, and Plaintiff does not suggest otherwise. Nevertheless, Plaintiff misses the point: whether a party is a "bad actor" cannot be objectively verified *regardless* of Defendants' purported knowledge of how customers used its products. (Op. 11.) And Plaintiff continues to ignore the Court's holding that "sales to unpopular customers was explicit in Defendants' risk warnings that it could sell 'certain types of solutions' to 'countries or customers that are considered disfavored.'" (*Id.* at 12.)

Plaintiff's allegations relating to violations of Cognyte's Code of Conduct and Meta's terms of use (which are not violations of law) remain relatively unchanged; thus, as before they "do not support a claim of securities fraud because they are mere puffery." (Op. 9.) *See also Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). Plaintiff counters by adding allegations that the Code of Conduct statements "were highly material to investors." (Ltr. 2.) However, Plaintiff's characterizations cannot convert "statements [that] are too general to cause a reasonable investor to rely upon them" into actionable statements. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016) (alteration in original) (citation omitted).[6] The SAC thus fails to plead any

---

[2] The Court may consider documents incorporated into the complaint by reference. (Op. 1.)

[3] Leave to amend should also be denied because the "new" articles were available to Plaintiff while the motion to dismiss was pending. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

[4] The Bangladesh allegations independently fail because Plaintiff fails to allege any corrective disclosures and resulting losses. (SAC ¶¶ 117-18.)

[5] Even if Cognyte did effectuate sales in violation of export control laws (it did not), Cognyte's "warnings do not support a securities fraud claim because they explicitly state that Cognyte may not comply with the laws and regulatory requirements governing its business." (Op. 13.)

[6] As discussed above, even if the aspirational Code of Conduct statements were not puffery (they are), Plaintiff fails to plead particularized facts showing that Cognyte violated the Code of Conduct. *See In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 581 (S.D.N.Y. 2012).

Hon. Lorna G. Schofield
October 28, 2024
Page 3

actionable misstatements or omissions.

*Scienter.* The proposed scienter allegations suffer from the same defects as the existing complaint: "the allegations are conclusory and in substance allege only what Sharon must have known, given his experience and role as CEO." (Op. 17.)[7] The SAC's new conclusory allegations all rely on Sharon's positions: what he "was aware of" based on his "time . . . serv[ing] as President of Verint's cyber intelligence business," what he "was almost certainly" aware of due to his role "as Cognyte's CEO," and what he must have "understood" as "a decades long veteran of the industry." (Ltr. 3.) These allegations are entirely nonresponsive to the flaws identified by the Court. (Op. 17-18.)

*Loss Causation.* Plaintiff acknowledges the Court's holding that "[a]ll of the alleged disclosures were materializations of business and reputational risks that Defendants expressly disclosed." (Ltr. 3 (quoting Op. 18).) Yet, the SAC does not plead any supposed harms not identified in Cognyte's explicit warnings, thus independently defeating Plaintiff's claim. Moreover, Plaintiff's conclusory allegation that it "plausibly alleges a causal relationship" between the purported corrective disclosures and declines in stock prices (SAC ¶¶114-16) cannot be credited because Plaintiff fails to meaningfully "'disaggregate those losses caused by'" other market events. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 85 (S.D.N.Y. 2015) (citation omitted). (*See, e.g.*, SAC ¶114 ("Cognyte also announced that it was reducing its non-GAAP revenue and diluted EPS guidance for FY 2022 by $10 million").)[8]

*Class Period.* For the reasons above, the proposed SAC fails to state any claim, but in any event its expansion of the Class Period to encompass pre-Class Period disclosures, which the Court properly held were nonactionable, is futile as well. (Op. 8-9.) Plaintiff cannot distinguish *In re Garrett Motion Inc. Securities Litigation*, 2022 WL 976269, at *16 (S.D.N.Y. Mar. 31, 2022) so instead relies on cases from outside this district.[9] Expanding the Class Period to a time when no shares traded cannot cure this defect. As Plaintiff's cited case recognizes, "the *earliest possible date* for the class period to begin is the day the company's shares became publicly available." *Borteanu*, 2023 WL 1472852, at *5 (Ltr. 2) (emphasis added). Moreover, for most of the allegations, the statute of limitations for bringing such claims has ended. *See Wilder v. News Corp.*, 2015 WL 5853763, at *14 (S.D.N.Y. Oct. 7, 2015) ("[T]he two-year statute of limitations applicable to [the Section 10] claims . . . had long since expired when the SAC pleading the expanded Class Period was filed.").

For these reasons, leave to amend should be denied.

---

[7] The Court also held that the amended complaint "[did] not attempt to plead motive and opportunity." (*Id.*) Plaintiff did not attempt to add any allegations concerning motive and opportunity to the SAC, nor could it as none exist.

[8] *Shash v. Biogen, Inc.*, 84 F.4th 1 (1st Cir. 2023) (Ltr. 3) is distinguishable because there the stock price "began to drop" the day after the corrective disclosure and "collapsed" the next trading day. *Id.* at 20.

[9] Plaintiff's out-of-circuit cases (Ltr. 2) cannot help them. In *Borteanu*, the court did not decide whether pre-class statements were actionable "because many of the pre-Class Period misrepresentations alleged by Plaintiff were repeated . . . *during* the Class Period." *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *6 (D. Ariz. Feb. 2, 2023). In *Zelman*, the court noted the general rule that "only those plaintiffs who traded in the securities at issue *while* the fraud could have been affecting those securities' value . . . can possibly state a claim for damage resulting from the fraud." *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 966 (N.D. Cal. 2005) (emphasis added) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 228 & n.5 (1988)). It is beyond question that disclosures in the Registration Statement could not have affected Cognyte's stock price before its stock began trading publicly.

Hon. Lorna G. Schofield
October 28, 2024
Page 4

                                    Respectfully submitted,

                                     /s/ Scott D. Musoff

                                    Scott D. Musoff

cc:     Counsel of record (via ECF)

Enclosures