

DEBORAH **+** CLARK-WEINTRAUB

.

**+** VIA ECF**+**

November 7, 2024

Hon. Lorna G. Schofield
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    *City of Omaha Police and Firefighters Retirement System v. Cognyte Software Ltd.*,
No. 1:23-cv-01769

Dear Judge Schofield:

We represent the Plaintiff in the above-referenced action.  We submit this reply in support of Plaintiff's letter-motion for leave to file the proposed SAC.[1]

*Misstatements and omissions.*  Contrary to Defendants' contention, the SAC adds details the Opinion identified as necessary to allege actionable misstatements and omissions.  For example, the SAC includes new allegations with respect to the requirements of Israeli and other jurisdictions' export laws (*see* ¶¶28-32, 34-35, 46, 104(a), (b), 105(a)) that are directly responsive to the Opinion's holding that "[t]he Complaint lack[ed] specifics about which particular law or regulation was violated." (Opinion at 15.)  In addition, the SAC alleges circumstantial facts supporting an inference that the sale of Cognyte's intercept spyware to Myanmar "actually took place."  (Opinion at 15.)  Based on investigative reporting by HAARETZ and REUTERS and reports from the NGO Justice for Myanmar and the U.S. State Department, the SAC alleges that (i) "[b]efore the [February 1, 2021] coup, [Myanmar's] military built an electronic warfare capability and bought surveillance technology including cell phone-hacking tools to monitor pro-democracy activists" and "target critics and protesters"; (ii) Cognyte won a tender for the sale of its dual-use intercept system to Myanmar in December 2020, and received a purchase order for the system by December 30, 2020 reflecting a scheduled target installation completion date of "the end of May/early June 2021"; (iii) "[t]wo people with knowledge of Myanmar's intercept plans" stated that the system was tested by Myanmar's state-owned telecommunications company; (iv) on October 21, 2021, Cognyte made a payment to Khine Thitsar Company, a Myanmar information technology business that is involved

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those set forth in the October 21, 2024 letter-motion requesting leave to file the proposed SAC.  (ECF No. 68.)

Hon. Lorna G. Schofield
November 7, 2024
Page 2

in surveillance and is a partner and vendor of Cognyte, evidencing that Cognyte was doing business in Myanmar following the February 2021 military coup; and (v) DECA had not issued marketing and export licenses to Cognyte for the sale of the intercept system to Myanmar. (¶45.) The SAC also adds allegations regarding another sale of dual-use technology by Cognyte in violation of Israeli law, specifically, Cognyte's 2021 sale of a "Web Intelligence" system and cellular tracking system for military intelligence to Bangladesh notwithstanding Israel's ban on doing business with the country. (¶¶46, 104(b).) The sale was made by Cognyte's wholly-owned, Cypriot subsidiary in violation of EU law, which Cyprus was obligated to follow. (*Id*.)[2] Together, the foregoing allegations support an inference that Cognyte was selling intercept technology in violation of Israeli, EU and U.S. law. These sales rendered Defendants' statements that Cognyte "complie[d] with the law in jurisdictions in which [it] operates,"[3] "endeavor[ed] to implement policies, procedures, and systems designed to achieve compliance with . . . regulatory requirements," and risk warnings regarding harms that might result if violations occurred materially false and misleading. *See In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 212 (D. Conn. 2023) (duty to disclose uncharged illegal conduct arises "when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring").

Likewise, the foregoing allegations and others added to the SAC (¶¶28-32) demonstrate that the challenged statements regarding Cognyte's business and target customer base were materially false and misleading because Israeli law required Defendants to know "how [its] products would be used and to what end." (Opinion at 12.) Defendants' protestations that they could not possibly have known that countries such as Myanmar and Bangladesh, repressive regimes subject to widespread sanctions, would use Cognyte's intercept technology to target vulnerable populations and political opponents is simply implausible. Moreover, a risk warning that Cognyte *might* sell to "*unpopular* customers" does not disclose ***ongoing sales in violation of applicable laws and regulations*** and for that reason, is itself materially false and misleading.

Defendants argue that the SAC's allegations are "conclusory" because they are based on news articles rather than accounts of confidential witnesses or internal Cognyte documents. However, "[n]ews articles, which frequently rely upon unnamed sources, constitute reliable bases for allegations." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1235-36 (N.D. Ga. 2019); *see also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150-51 (2d Cir. 2021) (allegations from news articles taken with other sources were sufficient to adequately allege misstatements). Neither internal company documents nor confidential witness allegations are required to plead a claim for securities fraud. *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F.

---

[2]    Contrary to Defendants' contention, the SAC alleges that "sales to Bangladesh are illegal under Cypriot [and] EU law." Cypriot law requires compliance with the European Union Global Human Rights Sanctions Regime of which EU Council Regulation 2018/647 is a part. (¶¶33, 105(b).) In addition, the SAC pleads that products sold to Bangladesh "were subject to Israeli law." Cognyte's wholly-owned, Cyprus-based subsidiary is an "Israeli corporation" subject to Israel's Defense Export Control Law ("DECL"). *See* DECL, Art. 2 ("Israeli corporation" is "[a] corporation that has its center of business in Israel, and which the control over it is, directly or indirectly, by an Israeli citizen or resident.").

[3]    The materiality of this and other statements in the Code of Conduct is evidenced by analyst commentary and the precipitous decline in Cognyte's shares. (¶¶3, 92.) *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) ("[S]harp criticism from industry analysts after [the corrective disclosure] further indicates the weight given to [the omitted] information."); *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 16 (2d Cir. 2011) (materiality satisfied by "the precipitous decrease in share price that occurred" after disclosure of the omitted information).

Hon. Lorna G. Schofield
November 7, 2024
Page 3

Supp. 3d 16, 38 (S.D.N.Y. 2019) ("this Court is aware of no authority requiring confidential witness allegations"); *In re PTC Therapeutics, Inc.*, No. 16-1124, 2017 WL 3705801, at \*16 n.22 (D.N.J. Aug. 28, 2017) (rejecting argument that allegations were insufficient because they were not supported by internal documents unavailable at the pleading stage). In addition, contrary to Defendants' contention, the decision of Israel's attorney general's office not to open an investigation of Cognyte's sale of intercept technology to Myanmar in response to the petition of human rights activists is not a determination that the sale did not violate Israeli law. Further, the suggestion that the technology was exempt from the DECL's licensing requirements is unsupported.

*Scienter*. Defendants simply ignore the new allegations added to the SAC regarding the DECL which make clear that Sharon was almost certainly one of the few individuals at Cognyte who was authorized to engage in negotiations with respect to defense export transactions. These allegations and Sharon's long history with Verint and Cognyte give rise to an inference that he was aware of the sale of the intercept systems to Myanmar and Bangladesh that is at least as strong as the competing inference. Indeed, the implication that such transactions could have been negotiated by rogue actors within the Company without the knowledge of the individuals authorized to conduct them consistent with Israeli law is not credible.

*Loss causation*. Defendants assert that the SAC does not allege loss causation because it "does not plead any supposed harms not already identified in Cognyte's explicit warnings." However, a company that warns of adverse consequences *if* specific laws are violated is not insulated from liability for investor losses when those risks later materialize if it omitted to disclose that it was violating those very laws at the time the warning was given. In this circumstance, the harms identified in the risk warning do not constitute the materialization of a "known risk." Further, Defendants' argument that Plaintiff has failed to meaningfully disaggregate the losses caused by other market events fails as well. Defendants have not identified any ***external market moving events*** such as S&P's downgrade of the U.S. credit rating in *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 85 (S.D.N.Y. 2015), on the same day as the alleged corrective events here. Moreover, a plaintiff is not required to apportion a stock drop among a defendant's multiple internal disclosures. Not only is it impossible for a plaintiff to do so at the pleading stage, "[i]f the Court were to accept Defendants' position, companies could insulate themselves from securities fraud claims by timing the release of [corrective] disclosures . . . to coincide with negative financial reports, thus preventing a plaintiff from ever alleging loss causation." *Metropolitan Transit Authority Defined Pension Benefit Master Trust v. Welbilt, Inc.*, No. 8:18-3007, 2020 WL 905591, at \*7 & n.5 (M.D. Fla. Feb. 6, 2020)

*Class Period*. *Borteanu v. Nikola Corp.*, No. 20-01797, 2023 WL 1472852, at \*5 (D. Ariz. Feb. 2, 2023), does not hold that a class period in a securities class action must begin on the day the company's shares begin to trade, and there is no statute of limitations issue precluding extending the class period to the date of the Registration Statement as the prior complaint alleged it was materially false and misleading and the composition of the Class has not changed. The false statements in the Registration Statement affected Cognyte's stock price because they were uncorrected and alive in the market when its stock began trading publicly.

For these reasons and those stated in Plaintiff's letter motion, leave to amend should be granted.

Hon. Lorna G. Schofield
November 7, 2024
Page 4

Respectfully submitted,

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*/s/ Deborah Clark-Weintraub*
Deborah Clark-Weintraub
Thomas L. Laughlin, IV
Donald A. Broggi
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
dweintraub@scott-scott.com
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
mminhas@scott-scott.com

*Attorneys for Lead Plaintiff and Lead Counsel for the Class*