UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                          :
CITY OF OMAHA POLICE AND                                  :
FIREFIGHTERS RETIREMENT SYSTEM,                           :
                                                          :            23 Civ. 1769 (LGS)
                                          Plaintiff,      :
                                                          :
                  -against-                               :            **ORDER**
                                                          :
COGNYTE SOFTWARE LTD, et al.,                             :
                                                          :
                                          Defendants.     :
--------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

WHEREAS, the September 30, 2024, Opinion and Order granted Defendants' motion to

dismiss the First Amended Complaint ("FAC"), dismissing the claims of securities fraud under §

10(b) and § 20(a) of the Exchange Act. *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte*

*Software Ltd.*, No. 23 Civ. 1769, 2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024).  Plaintiff was

directed to seek any leave to replead by October 21, 2024.

WHEREAS, Plaintiff timely requested leave to amend the FAC and filed a proposed

Second Amended Complaint ("SAC").  Defendants opposed Plaintiff's request, and Plaintiff

replied.

WHEREAS, the proposed SAC maintains the claim for securities fraud and contains

additional allegations regarding the putative Class Period, Defendants' alleged misstatements and

omissions, scienter and loss causation.

WHEREAS, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should

freely give leave [to amend the Complaint] when justice so requires."  Denial of leave to amend

is proper if amendment would be futile. *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 609-10

(2d Cir. 2024).  WHEREAS, to support a claim for securities fraud, "a plaintiff must plead: (1) a

material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 102 (2d Cir. 2022).[1] "The first two elements must be pled with heightened specificity pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b)." *Id.* at 102-03.

**Expanded Class Period**

WHEREAS, the motion to dismiss opinion held that "Defendants' statements in the Initial Registration Statement (the "Registration Statement") are inactionable because they occurred before the Class Period." *Cognyte Software Ltd.*, 2024 WL 4349289, at *4.  The proposed SAC amends the start date of the Class Period from February 2, 2021, the day Cognyte's stock first began trading, to January 13, 2021, the day the Initial Registration Statement was filed with the Securities and Exchange Commission (the "SEC").

WHEREAS, Defendants argue that the proposed SAC improperly "expand[s] the Class Period to a time when no shares [were] traded." This Order does not consider that argument because, even if the alleged misstatements and omissions in the Registration Statement are considered, they are inactionable for the reasons discussed below.

**Material Misrepresentations or Omissions**

**A. New Allegations Regarding Code of Conduct Statements**

WHEREAS, the proposed SAC contains additional allegations regarding Defendants'

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

alleged misstatements in Cognyte's Code of Conduct.  Statements are mere puffery and cannot support a claim of securities fraud where the "statements . . . are too general to cause a reasonable investor to rely upon them, and thus cannot have misled a reasonable investor.  They are statements that lack the sort of definite positive projections that might require later correction." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 224 (2d Cir. 2016).

WHEREAS, the motion to dismiss opinion held that Cognyte's Code of Conduct statements "cannot support a claim for securities fraud because they are generic statements that do not invite reasonable reliance, and therefore are not materially misleading."  *Cognyte Software Ltd.*, 2024 WL 4349289, at *5.  The proposed SAC's new allegations include Defendants' statement in Cognyte's Code of Conduct that Cognyte "complie[d] with the law in jurisdictions in which [it] operate[d]" and allegations concerning the materiality of the Code of Conduct statements to investors.  Plaintiff argues that these new allegations demonstrate that the Code of Conduct statements were "highly material" and not mere puffery.  However, the additional complied-with-the-law statement does not change the analysis, as the FAC already included alleged misstatements from the Code of Conduct that Cognyte "complies with the law," which the Court found too generic to support a claim for securities fraud.  *Cognyte Software Ltd.*, 2024 WL 4349289, at *5.

Regarding the alleged materiality of the Code of Conduct statements, the analyst commentary upon which the proposed SAC now relies does not change the fact that Cognyte's Code of Conduct statements have too little substance to "invite reasonable reliance" by investors. *Singh v. Cigna Corp.*, 918 F.3d 57, 60 (2d Cir. 2019).  Without alleging misstatements describing compliance in greater specificity and detail, the proposed SAC does not plead a sufficient

3

securities fraud claim based on allegedly false statements in the Code of Conduct.

## B. New Allegations Regarding Cognyte's Business and Customers

WHEREAS, the motion to dismiss opinion held that the FAC "fails to plead that Defendants made actionable material omissions in the description of their business." *Cognyte Software Ltd.*, 2024 WL 4349289, at *6. The proposed SAC contains additional allegations regarding Defendants' alleged misstatements concerning Cognyte's business and customers. Section 10(b) and Rule 10b-5(b) require disclosure of material information only when necessary to make statements "not misleading." *Matrixx Initiatives, Inc., v. Siracusano*, 563 U.S. 27, 44 (2011). However, "[c]ertain alleged misrepresentations in [an investment] offering are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

WHEREAS, the proposed SAC's additional alleged misstatements about Cognyte's business and customers are contained in Cognyte's Registration Statement. Specifically, the proposed SAC relies on two examples. First, Defendant Sharon's quoted statement that Cognyte provides "software that empowers governments and enterprises" with technology to create a "safer world" and "identify, neutralize, and prevent terror, crime, and cyber threats." Second, the Registration Statement's descriptions of Cognyte's product uses, including that governments relied on Cognyte's technology to "accelerate security investigations" to "prevent national security, personal safety, business continuity and cyber threats." The proposed SAC states that those statements were materially false and misleading because they "portrayed Cognyte's customer base as consisting of governments and corporate enterprise customers seeking defensive

4

solutions against cyber-attacks, intrusions and other threats by terrorists and criminals," when in reality Cognyte was "indiscriminately" selling its products to "bad actors . . . identified by the relevant authorities in the jurisdictions in which Cognyte operated" who had "dismal human rights records."

WHEREAS, the proposed SAC also includes allegations regarding what Defendants were legally required to know about Cognyte's customers' use of its products.  The proposed SAC now cites a rule from the Israeli Defense Export Control Agency that requires any exporter requesting an Israeli export license to submit a form providing "declarations of the Israeli supplier and the end user regarding the intended use of the equipment" sold.  The proposed SAC also contains additional allegations regarding Cognyte's alleged sales to "bad actors" in Myanmar and Bangladesh.

WHEREAS, taken together, even assuming Defendants were required to know how Cognyte's products would be used, the proposed SAC's allegations still do not overcome the company's risk warnings which explicitly stated that Cognyte could sell its product to "countries or customers that are considered disfavored by the media or by certain political or privacy organizations." *See Fernandes v. Centessa Pharm. PLC*, No. 22 Civ. 8805, 2024 WL 3638254, at *22 (S.D.N.Y. Aug. 2, 2024) (finding statements not misleading where investors "were specifically forewarned that" their investments may suffer harm "as a result of the exact problem the Registration Statement warned of").  The proposed SAC's allegations regarding Cognyte's sales to "undeniable bad actors" fails for the same reason because the risk disclosure warned of possible sales to disfavored customers.

5

### C. New Allegations Regarding Export Laws

WHEREAS, the motion to dismiss opinion held that Defendants' statements regarding their compliance with export laws "do not support a securities fraud claim because they explicitly state that Cognyte may not comply with the laws and regulatory requirements governing its business," and the FAC failed to allege adequately that Defendants had violated export laws. *Cognyte Software Ltd.*, 2024 WL 4349289, at *7. The proposed SAC contains additional allegations regarding Defendants' alleged violations. "[C]autionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021). However, "[w]hen a securities fraud claim is premised on the defendant's predicate violations of law or accounting standards, the facts of that underlying violation must be pled with particularity." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021). "Because [defendant's] statements were materially false or misleading *only to the extent that [illegal] conduct actually occurred*, appellants must plead sufficient -- though not exhaustive -- facts describing the essential elements of that underlying conduct." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019) (emphasis added).

WHEREAS, the proposed SAC alleges that Defendants made material misstatements and omissions in Cognyte's Registration Statement regarding Defendants' compliance with export laws. The proposed SAC relies on two risk warnings in Cognyte's Registration Statement. First, that Defendants "endeavor[ed] to implement policies, procedures, and systems designed to achieve compliance" with export laws. Second, that Cognyte's business "depend[s] largely on

6

export and marketing license approvals from . . . Israel and . . . other countries," and that, if the company fails to obtain or maintain such approvals, its business "could be interrupted, resulting in a material adverse effect on [their] business."  Both alleged misstatements are inactionable because, as the motion to dismiss opinion emphasized, the "warning[s] cannot be read to say that Defendants were in compliance with all applicable laws, and in fact expressly describes how they may not be."  *Cognyte Software Ltd.*, 2024 WL 4349289, at *7.  Plaintiffs' argument that the risk warnings "were materially false and misleading because [they] omitted to disclose that Cognyte was not then in compliance with export control laws" fails because, as described below, the proposed SAC still fails to plead facts to show that violations of law actually occurred.

WHEREAS, the proposed SAC adds detailed allegations of US and EU laws restricting exports of products made by Cognyte to Myanmar.  The proposed SAC also provides additional allegations that Cognyte sold its product in violation of those laws, relying primarily on two news articles as circumstantial evidence of the sales.  Specifically, the proposed SAC now cites (1) an April 9, 2024, *Haaretz* article that discusses Cognyte's alleged sale to Myanmar in violation of Israeli export law and (2) a January 10, 2023, article describing a sale of surveillance equipment to Bangladesh by Cognyte's subsidiary based in Cyprus.  The proposed SAC also cites a 2021 U.S. State Department country report on human rights issues in Myanmar.

WHEREAS, while the proposed SAC provides specifics about which particular laws it alleges Defendants violated, the proposed SAC still fails to allege that the violations actually occurred.  Plaintiff argues that the new allegations demonstrate that Cognyte's risk warnings regarding hypothetical violations of export control laws were materially false and misleading because the violations were already occurring.  However, neither of the two new articles the

proposed SAC cites provide support that Cognyte was found to have sold its products in violation of export laws.  While the April 9, 2024, Haaretz article does state that Israel's Attorney General's Office found that Cognyte did not receive a license from Israel to do business with Myanmar, as required by Israeli export law, the article also acknowledges that Israel can exempt entities from that requirement at its discretion and states that the Office found "no preliminary grounds . . . to allow the opening of an investigation" into Cognyte's business in Myanmar.  The January 10, 2023, article similarly fails to provide support that Defendants violated export laws and states that the Israeli government "did not specifically address . . . whether it approved [Cognyte's] sales to Bangladesh."  Moreover, the U.S. State Department country report -- which found that Myanmar's "military employed invasive dual-use surveillance . . . technologies" that were built before the military coup -- says nothing about whether Cognyte provided that surveillance equipment or whether, if Cognyte did provide the equipment, Cognyte provided it in violation of export laws.

WHEREAS, Plaintiff argues that "the decision of Israel's attorney general's office not to open an investigation of Cognyte's sale of its intercept technology . . . is not a determination that the sale did not violate Israeli law."  However, without additional allegations, the proposed SAC fails to plead sufficient facts that Cognyte's conduct satisfied the elements of the laws the proposed SAC describes.  While Plaintiff is correct that news articles can constitute a reliable basis for allegations, the Second Circuit cases upon which Plaintiff relies provided more than conclusory news articles to support their misstatement allegations.  *See In re Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 148 (2d Cir. 2021) (complaint referred to a confidential witness, news articles and an expert in the relevant practice area); *Oklahoma Firefighters Pension*

*& Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019) (complaint referred to specific information contained in defendant's internal documents).  Taken as a whole, the proposed SAC still fails to allege "that the Israeli authorities had charged Cognyte with any violation, or that such a risk would necessarily materialize." *Cognyte Software Ltd.*, 2024 WL 4349289, at \*8; *see In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 07992, 2023 WL 2744029, at \*20 (S.D.N.Y. Mar. 31, 2023), *aff'd sub nom. Gabelli Asset Fund v. Garrett Motion Inc.*, No. 23-668-CV, 2024 WL 1653451 (2d Cir. Apr. 17, 2024) (holding that defendant's risk disclosure was not misleading because plaintiffs did not show that the risk was "necessarily imminent . . . and therefore it was not necessarily misleading" for defendant to state the risk as hypothetical). The proposed SAC fails to allege that Defendants' statements regarding Cognyte's compliance with applicable law are actionable, especially in light of Cognyte's risk warnings, and the failure to allege that Cognyte had been found to be in violation of Israeli law or had not obtained an exemption.

**Loss Causation**

WHEREAS, the motion to dismiss opinion held that the FAC "fails to plead loss causation because it does not adequately allege that concealed information was disclosed or that the alleged disclosure caused a decline in Cognyte's stock price." *Cognyte Software Ltd.*, 2024 WL 4349289, at \*9.  The proposed SAC contains additional allegations regarding loss causation. Loss causation "is the proximate causal link between the alleged misconduct and the plaintiff's economic harm." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007); *accord Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022).  To plead loss causation, a complaint must allege "that the misstatement or

9

omission [in question] concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005); *accord Lozada v. TaskUs, Inc.*, 710 F. Supp. 3d 283, 326 (S.D.N.Y. 2024).

WHEREAS, the proposed SAC provides new allegations regarding Cognyte's stock price movement, trading volume and news released on the alleged disclosure dates.  The proposed SAC fails to allege loss causation because it identifies the materialization of harms that Cognyte had expressly disclosed in its risk warnings.  *See Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 146 (S.D.N.Y. 2021) ("The drop in price cannot be traced to materialization of a known risk, rather than the disclosure of a concealed one.").  The proposed SAC also fails to allege that Cognyte's stock price fell because of the alleged disclosures, considering the overlap of the Class Period and the "marketwide phenomenon" of the COVID-19 pandemic.  *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 84-5 (S.D.N.Y. 2015) (finding no loss causation in part where alternative factors such as "the market upheaval caused by [the United States' credit rating downgrade] . . . render[ed] [plaintiffs'] allegations insufficiently plausible to withstand a motion to dismiss"); *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 498 (S.D.N.Y. 2016) ("Although [p]laintiffs need not rule out other contributing factors or alternative causal explanations at the motion to dismiss stage, they must still allege enough facts regarding their loss to support the inference that they would have been spared all or an ascertainable portion of that loss absent the fraud.").

WHEREAS, Plaintiff's argument that Cognyte's risk warnings regarding the hypothetical violations of export control laws were misleading and thus "do not constitute the materialization of a known risk" fails because, as noted above, the risk warnings were not misleading.  The

proposed SAC fails to allege loss causation.

WHEREAS, granting leave to replead would be futile because Plaintiff was on notice of the deficiencies in the FAC, which were not cured in the SAC. The SAC fails to allege (1) an actionable misrepresentation or omission and (2) loss causation, both necessary elements for the claims to survive. It is hereby

**ORDERED** that Plaintiff's motion for leave to file the proposed SAC is **DENIED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 68 and close the case.

Dated: June 6, 2025
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**